## ARNOLD v. LOCOMOTIVE ENGINEERS MUT. LIFE & ACCIDENT INS. ASS'N.—204 S. W. (2d) 191.

Middle Section.   October 26, 1946.

Petition for Certiorari denied by Supreme Court, April 12, 1947.

Joe Brown Cummings and R. C. Boyce, both of Nashville, for appellant.

Garland S. Moore and Albert Ewing, Jr., both of Nashville, for appellee.

HICKERSON, J. Mary Wilkes Arnold, widow of L. W. Arnold, brought this suit against defendant to recover upon an alleged oral contract of life and accident insurance.

Complainant contends that C. B. Arnold made the contract of insurance with her husband as agent of defendant with full authority so to do; that her husband was killed while the insurance was in force; and that defendant was estopped to deny the contract because it had cashed a check of her husband, given to pay the first premium on the insurance contract, when defendant knew her husband was dead.

Defendant contends: (1) C. B. Arnold did not have authority to bind it in the making of the alleged oral contract of insurance or to insure. (2) C. B. Arnold did not make the alleged oral contract of insurance or to insure. (3) Defendant was not estopped to deny the alleged oral contract of insurance or to insure.

The chancellor found the issues in favor of defendant and dismissed complainant's bill. Complainant filed the

record in this court for writ of error with proper petition, assignments of error, and brief.

(1) Did C. B. Arnold have authority to bind defendant upon the alleged oral contract of insurance?

C. B. Arnold was a soliciting agent and district supervisor of defendant. His actual authority is stated in the following letter:

"The Locomotive Engineers Mutual Life and Accident Insurance Association

"1136 B. of L. E. Building,

"Cleveland, Ohio.

"A. Johnston,         Jas. H. Cassell,         H. F. Hempy,
"President         Vice President         Gen'l Secy-Treas.

"——— 194—

"To Officers and Members,

"All Divisions in the United States.

"Dear Sirs and Brothers:

"This will introduce Mr. who is authorized by this Association to discuss insurance matters and to explain a number of new types of insurance coverage recently adopted by our Association. He also is authorized to receive applications for insurance and the first premium payment for transmission to the Home Office. He shall issue this Association's receipt for all money collected by him.

"The bearer is fully qualified to discuss insurance matters and we shall appreciate your granting him an interview.

"Yours Fraternally,

"The Locomotive Engineers Mutual Life & Accident Insurance Association

"By:

"President.

"Vice President.

"(Seal)  General Secretary-Treasurer."

There is nothing in this letter which would give C. B. Arnold authority to enter into an oral contract of insurance in behalf of defendant. This letter plainly limits his authority, and states that applications for insurance taken by him and first premium payments received by him were to be transmitted to the Home Office of defendant.

This agent took the written application of L. W. Arnold for insurance with defendant on February 21, 1942. The application provides:

"I understand that the insurance herein requested shall not take effect unless and until this application is approved at the Home Office.

.    .    .    .    .

"The first premium payment must be forwarded to the Home Office with this application.

"If additional information is necessary or if a physical examination is required, the applicant will be so advised before this application is approved at the Home Office."

It is clearly established that L. W. Arnold knew the contents of this application when he gave it to the agent of defendant.

The first premium was paid by check of L. W. Arnold at the time the application was taken. The agent issued a receipt for this premium payment to L. W. Arnold, which states:

"This receipt for money is issued conditionally upon the above named person's application for insurance be-

ing received and approved at the Home Office of The Locomotive Engineers Mutual Life and Accident Insurance Association. In event of rejection of such application, the money mentioned herein will be refunded by the Insurance Association and there shall be no further liability on the Insurance Association as a result of the issuance of this receipt.

$12.02   The Locomotive Engineers Mutual
   .12   Life & Accident Insurance Asso-
————   ciation,
$12.14   By C. B. Arnold
            Title— Dist. Supn.''

■ It is not necessary to decide whether C. B. Arnold was a general agent or a special agent. Defendant had the right to limit his authority as a general agent or a special agent; and we think it effectively did so.

In Continental Ins. Co. v. Schulman, 140 Tenn. 481, 205 S. W. 315, 318, the court said: ''The apparent scope of an agent's authority is necessarily limited by the usage and practice obtaining in the conduct of the particular line of business in which he is employed. This is true whether he be the chief executive officer of a corporation (Bank, 132 Tenn. 152, 177 S. W. 74), or a mere traveling salesman. (Nixon Mining Drill Co. v. Burk, 132 Tenn. 481, 178 S. W. 1116, L. R. A. 1916C, 411; Somerville v. Gullett Gin Co., 137 Tenn. 509, 194 S. W. 576.)''

■ L. W. Arnold was charged with knowledge of the limitations upon the authority of C. B. Arnold, as agent of defendant, plainly stated in the application which he signed, and in the receipt for the first premium which was given to him, to the effect that the contract of insurance did not become effective, ''unless and until this application is approved at the Home Office.''

■ In Slocum v. New York Life Ins. Co., 228 U. S. 364, 33 S. Ct. 523, 527, 57 L. Ed. 879, Ann. Cas. 1914D, 1029, the court stated this rule: "One who deals with an agent, knowing that he is clothed with a circumscribed authority and that his act transcends his powers, cannot hold his principal; and this is true whether the agent is a general or a special one, for a principal may limit the authority of one as well as of the other."

■ ■ The application for this life and accident policy, which provided that the contract of insurance would not become effective until the application was approved by defendant, was simply an offer on the part of the applicant to enter into an insurance contract with defendant; and defendant could accept or reject the offer. The agent had no authority to enter into an unconditional contract of insurance with the applicant effective March 1, 1942; and the applicant was put on notice of this limitation of the agent's authority. Neither complainant nor her husband could claim the benefit of any act or representation of this agent done or made in excess of his known authority. Braman v. Mutual Life Ins. Co., 8 Cir., 73 F. (2d) 391; New York Life Ins. Co. v. McCreary, 8 Cir., 60 F. (2d) 355; Distassio v. American United Life Ins. Co., Mo. App., 179 S. W. (2d) 610; 2 Couch on Insurance, 1483, section 518.

We concur in the conclusion which the chancellor reached that C. B. Arnold did not have actual, apparent, or ostensible authority to make the alleged oral contract of insurance with L. W. Arnold which would bind defendant. If the case should be treated as an alleged oral contract to insure, the same lack of authority would be present.

(2) Did defendant waive its right to assert that it is not bound by the alleged oral contract, or is it estopped to deny the contract?

The facts upon which this assignment is predicated are these:

The Brotherhood of Locomotive Engineers is an unincorporated labor organization, to which we shall refer as the Brotherhood. Engineers and firemen of locomotive engines are eligible for membership in this organization.

Defendant is an incorporated, non-profit insurance association which was organized to write life and accident policies for members of the Brotherhood. The two organizations have their main offices in the same building in Cleveland, Ohio, but they are operated entirely separately. All policy holders in defendant are members of the Brotherhood, but all members of the Brotherhood are not policy holders in defendant. To some extent they have the same officers.

John E. Phillips is the local agent of defendant at Nashville, Tennessee; and, also, a member of the Brotherhood. Such agents are located at different places throughout the country. A district supervisor of defendant, with limited authority and territory, contacts these local agents and advises with them concerning the selling of insurance in defendant to members of the Brotherhood. These district supervisors are also soliciting agents of defendant. C. B. Arnold was such district supervisor.

The application and check for the first premium payment which C. B. Arnold took from L. W. Arnold were sent to the home office of defendant in Cleveland, Ohio.

When these papers reached the home office of defendant they took the customary course. The application was sent to the office of the chief medical examiner of defendant, and the check for the first premium was sent to the

office of the cashier of defendant. The chief medical examiner required a medical examination of the applicant, and so advised the General Secretary-Treasurer of defendant on March 2, 1942. Had the application been approved the insurance would have been in force as of March 1, 1942.

Upon receipt of this notice from the chief medical examiner, the General Secretary-Treasurer of defendant notified John E. Phillips, local agent of defendant at Nashville, Tennessee, by letter dated March 2, 1942, that a medical examination of L. W. Arnold was required and directed Mr. Phillips to arrange for the examination. L. W. Arnold had been killed in a railroad accident on March 1, 1942, about two thirty in the afternoon, so the request for medical examination was ignored by Mr. Phillips.

On March 3, 1942, Mr. Phillips notified the Brotherhood in Cleveland, Ohio, that L. W. Arnold had been killed in an accident on March 1, 1942. This letter took the usual course in the home office of the Brotherhood so proper records of the death of L. W. Arnold could be made. The Brotherhood did not notify defendant of the death of L. W. Arnold, nor was it the custom of the Brotherhood to do so because defendant always required proof of death of an insured.

It was the custom of defendant to deposit the payments of first premiums in its own bank account and refund the premium if the application was rejected. The check for the first premium in this case was dated March 1, 1942, because the insurance would become effective as of that date if the application were accepted. This check was deposited by defendant on March 9, 1942, eight days after L. W. Arnold was killed. We concur in the finding of the

chancellor that defendant did not know L. W. Arnold was dead when the check was deposited.

By letter dated March 21, 1942, and received March 23, 1942, John E. Phillips notified defendant that L. W. Arnold had been killed on March 1, 1942. This was the first notice that defendant had of his death. Defendant promptly notified Mr. Phillips by letter dated March 24, 1942, that defendant had never accepted the application of L. W. Arnold for insurance; and, therefore, denied liability. In this letter a check for $12.14 was sent to Mr. Phillips to be given the widow of L. W. Arnold as a refund of the first premium which her husband had paid.

■ Under these facts defendant did not waive its right to deny the alleged oral contract, nor was it estopped to deny liability under the alleged contract. Of course, defendant could not waive its rights without full knowledge of the facts. Cashing the check according to the usual custom of business, with no knowledge of the prior death of L. W. Arnold, could in no sense be a waiver of defendant's right to claim no contract of insurance existed at the time of the death of L. W. Arnold. This is especially true when defendant promptly denied liability and refunded the premium when it learned of his death.

■ There is no element of estoppel connected with depositing the check. The depositing of the check by defendant did not cause complainant to change her position. She was not misled; she did not surrender nor lose any right because the check was deposited. She had a right to bring her suit under the alleged oral contract of insurance. This right was not hampered by the fact that the check had been deposited by defendant. The rules and principles relating to waiver and estoppel are fully

stated in Baird v. Fidelity-Phenix Fire Ins. Co., 178 Tenn. 653, 162 S. W. (2d) 384, 140 A. L. R. 1226.

(3) There is only one question left to determine: Was there an oral contract of insurance, or to insure, as claimed by complainant?

Complainant assumes in her petition for writ of error, assignments of error, and brief that the chancellor found there was an oral contract of insurance. The record does not support that assumption. The pleadings squarely made the issue. In his opinion the chancellor stated: "Incidentally, on the question as to whether or not C. B. Arnold did orally agree that the applicant would be insured as of twelve o'clock noon, March 1, 1942, it appears that the practice of defendant company is to have their policies take effect as of the first day of the month. Hence, it is apparent from the proof, that, if the application had been accepted and the policy issued, it would have taken effect as of March 1, and that is, apparently, what the agent undertook to explain to the applicant."

The decree provides: "The equities alleged in the bill are fully met and denied by the answer, and are not sustained by the proof." Now, the ultimate question made by the pleadings was, whether the oral contract of insurance, or to insure, was made. Whether C. B. Arnold had authority to make the oral contract so as to bind defendant, and whether defendant was estopped to deny the oral contract, or had waived its right to assert there was no oral contract, were all dependent upon the question of fact: Was an oral contract made? The chancellor held that C. B. Arnold did not orally agree that L. W. Arnold "would be insured as of twelve o'clock noon, March 1, 1942." There is no assignment challenging that finding of fact by the chancellor.

Rule 12 of this court provides: "Errors not assigned and supported by brief according to this rule, will be treated as waived, but the court, at its option, may notice an error overlooked by counsel."

In view of the entire record, we are constrained to find the facts, though no error is assigned challenging the conclusion of the chancellor, that C. B. Arnold did not agree with L. W. Arnold unconditionally that L. W. Arnold would be insured as of twelve o'clock noon, March 1, 1942. We hold the chancellor reached the correct conclusion on this determinative fact; and concur in the finding of the chancellor: "That, if the application had been accepted and the policy issued, it would have taken effect as of March 1, and that is, apparently, what the agent undertook to explain to the applicant." There is no error in the decree of the chancery court. The assignments are overruled, the decree of the chancery court is affirmed, and all costs are taxed against Mrs. Mary Wilkes Arnold.

Felts and Howell, JJ., concur.