AMERICAN NATIONAL INSURANCE COMPANY,
Plaintiff in Error, v. J. C. THOMPSON, Defendant in
Error. —316 S. W. (2d) 52.

Eastern Section.   October 23, 1957.

Certiorari denied by Supreme Court February 6, 1958.

Fowler, Rountree & Fowler and Wilbur W. Piper, Knoxville, for plaintiff in error.

Lockett & Mahood, Knoxville, for defendant in error.

McAMIS, P. J. This is a suit upon an alleged life insurance contract on the life of Mrs. Beatrice D. Thomp-

son, naming as the beneficiary the plaintiff J. C. Thompson. The defendant filed a plea denying that the policy was delivered during the lifetime of Mrs. Thompson or that it ever became bound on an insurance contract covering her life. The plaintiff filed a replication insisting that, if the policy never became a binding contract as insisted, defendant was, nevertheless, bound on a premium receipt issued by it to Mrs. Thompson providing interim insurance between the date of the application and the date of issuance of any policy thereunder. Defendant joined issue on the replication.

At the close of proof in chief plaintiff was allowed to amend the declaration by adding a separate count charging that defendant negligently delayed acting on the application and negligently failed to deliver the policy until after Mrs. Thompson's death. Defendant's motion for a directed verdict made at the close of all the evidence was overruled and the jury returned a verdict for $1,000, the fact amount of the policy, plus 25% penalty. Defendant filed a motion for a new trial which was overruled and it has appealed in error renewing here its defenses and insisting the court erred in its charge to the jury and in declining to charge certain of its requested instructions.

On April 16, 1956, Mrs. Moneymaker, an insurance saleswoman operating out of defendant's Knoxville agency, interviewed Mrs. Thompson and took her application for a life insurance policy for $1,000. At the same time she collected a premium of $6.81. On the same date Mrs. Thompson was examined by defendant's Knoxville medical examiner who reported, in addition to many favorable findings, "extra heart beat 3 per min." The

report of the medical examiner was then forwarded with the application showing a premium payment of $6.81 to defendant's home office in Galveston, Texas.

There were no further communications between Mrs. Thompson and the agent or the Company. After an appraisal by its underwriter of Mrs. Thompson's medical report and a finding of pus in a specimen of urine mailed to it, defendant on May 24, 1956, issued the policy here in question but at an up-rated premium requiring the payment of an additional $4 upon delivery of the policy to the applicant.

There is evidence which the jury could have accepted that the policy reached the Knoxville office on May 27, 1956. On May 29, 1956, Mrs. Thompson died suddenly and unexpectedly. For several days before and after the receipt of the policy and Mrs. Thompson's death, Mrs. Moneymaker was away on vacation and, to avoid a possible loss of a sale of the policy, delivery was not tendered by anyone else connected with the Knoxville office prior to Mrs. Thompson's death. On Mrs. Moneymaker's return she attempted to deliver it and, finding that Mrs. Thompson had died, delivered it to the beneficiary, collecting at the same time the additional premium due. Defendant thereafter attempted to return the entire premium to plaintiff but the tender was declined.

We consider first defendant's insistence that the court erred in not holding the premium receipt unambiguous and in allowing the jury to determine, first, whether it is ambiguous and, secondly, what an ordinarily prudent person applying for life insurance would be justified in thinking it was intended to mean with regard to interim insurance.

It is clear that defendant intended, subject to certain conditions at least, to provide interim insurance, we assume, as a consideration for collecting the premium in advance of action on the application and delivery of the policy. The application itself provides that: "Insurance Liability" may be created "by reason of this application * * * in accordance with the terms of the aforementioned receipt. * *" The receipt under Condition Four, as will be hereinafter seen, speaks of insurance liability "under the foregoing paragraphs." Indeed, defendant's underwriter testified: "A conditional receipt is an indication that a certain amount of money has been paid on the policy, and to show that under certain conditions, the person is insured from the date of the application."

The principal question is whether the receipt is so ambiguous as to justify the determination of its intent and meaning by the jury and, if so, whether, under the rule of liberal construction in favor of the insured, the jury could reasonably find as one permissible construction that interim insurance was intended between the date of the application and action by defendant on the application, under that state of facts most favorable to plaintiff appearing from the most favorable view of the evidence. To better understand the problem we quote the pertinent provisions of the application (omitting the so-called Conditions Three and Five):

*"Conditions:—One* Enough of the insurance applied for in such application to make the Company's aggregate insurance on the above named person not over $15,000 shall become effective from the date of this receipt and subject to the provisions thereof and of the policy applied for if a policy is issued without modification of the

plan, amount of insurance or rate of premium applied for in such application.

*"Two* The excess over the $15,000 insurance mentioned in the next preceding paragraph, or, if the amount of insurance granted by the Company is less, the rate of premium greater, or the plan other than that applied for in such application, the entire amount of the insurance applied for, shall be effective *only* upon complete and concurrent fulfillment at the time of policy delivery of three (3) conditions as follows:

"(i) Issue of such policy and actual delivery of same during the lifetime and good health of the person to be insured must have taken place;

"(ii) The entire premium for such policy must have been settled for and accepted by the Company or its authorized agent; and

"(iii) Neither the Company nor any person, the Company's agent or not, shall by such delivery or otherwise determine at the time thereof the existence of such good health, but acceptance of such policy by the undersigned of the application shall be deemed representation that then and theretofore no change in such good health has taken place since the date of this receipt.

*"Four* No insurance liability of the Company shall be deemed to have been created under the foregoing paragraphs and the settlement receipted for shall be promptly returned by the Company to the premium payer under any one of the following conditions:

"(i) If within sixty (60) days from the date of this receipt, no policy in exchange for the settlement receipted for, or no written notice of approval of the application

from which this receipt was detached has been received by the undersigned of such application;

"(ii) If such application is rejected or postponed by the Company; or

"(iii) If, on such application, inurance less in amount, greater in rate of premium, or other in plan than that applied for has been offered by the Company and been refused or not accepted and paid for promptly."

■ The ambiguity is apparent. Under Conditions One and Two it is not clear what bearing the amount of the policy has on the question and if interim insurance was intended it is difficult to understand why the issuance and delivery of a policy would have any bearing upon the question, since interim insurance never exists after the policy is issued and delivered. Condition Four can reasonably be construed to mean that interim insurance is to continue until the policy as applied for has been issued or rejected, if up-rated in premium, until the applicant has refused to pay the additional premium demanded by the Company.

As to the good health of the applicant, the language of Condition Two, Section i, is: "Issue of such policy and actual delivery of same during the lifetime and good health of the person to be insured must have taken place." It is thus to be seen that the question of insured's good health relates to the Company's liability under the policy. Nowhere does the receipt make interim insurance under the receipt dependent upon the good health or continuance in life of the applicant until issuance of the policy. To construe the receipt as defendant insists would bring the good health provision into conflict with Condition K which plainly implies that the con-

dition of applicant's health might be such that a higher premium would have to be charged.

■ If we are correct in holding the receipt ambiguous, it became the duty of the triers of the facts to adopt that reasonable construction most favorable to the insured and we think the jury was warranted in finding that interim insurance was intended to continue from the date of the application until the Company either (1) rejected the application, (2) delivered the policy at the premium rate set forth in the application, or (3) tendered a policy at an increase in premium, and (4), if at an increase in premium, the applicant refused to accept the policy and pay the increase in premium.

While the judgment can be affirmed on the ground that the jury acted properly in construing the receipt as it did, we are further of opinion this case is not within the rule of cases holding that where the Company determines in good faith, either before or after the loss, that the applicant was never an insurable risk it is not to be held bound on the premium receipt. In this case, admittedly, the Company found that the applicant was an insurable risk though at an increase in premium. It can hardly be assumed that an insurer willing to issue a policy at an increase in premium, had it known all the facts at the time the receipt was issued, would have declined to assume a temporary liability of a few days or weeks.

Nor under the construction of the receipt adopted by the jury, can this case be brought within the line of cases involving receipts issued to the applicant expressly providing that interim insurance will be provided from the date of the application provided the insurance company

becomes satisfied the applicant was an insurable risk at the date of the application, with the reserved right of the company to determine in good faith the applicant's insurability. See Fields v. Equitable Life Assurance Soc., Mo. App., 118 S. W. (2d) 521; Wolfskill v. American Union Life Insurance Co., 237 Mo. App. 1142, 172 S. W. (2d) 471; Duncan v. John Hancock Mut. Life Ins. Co., 137 Ohio St. 441, 31 N. E. (2d) 88; Stonsz v. Equitable Life Assur. Soc., 324 Pa. 97, 187 A. 403, 107 A. L. R. 178; Colorado Life Ins. Co. v. Teague, Tex. Civ. App., 117 S. W. (2d) 849.

The Company wrote the receipt. It could have reserved the right to determine the applicant's insurability or it could have provided in plain terms that no liability was assumed unless the applicant was in good health. Having failed to do either, the applicant might well conclude that she was covered from the date of the receipt,

In Liberty National Life Insurance Company v. Hamilton, 6 Cir., 237 F. (2d) 235, 240, also a suit upon a conditional receipt alleged to be ambiguous as to the period of coverage, the Court, in approving the language of an opinion by Judge Learned Hand, apropos here, said:

"The reasoning of Judge Learned Hand, in the Gaunt case, is logical and persuasive. Speaking of an application, he said (160 F. (2d) 601): '* * * but the application was not to be submitted to underwriters; it was to go to persons utterly unacquainted with the niceties of life insurance, who would read it colloquially. It is the understanding of such persons that counts; and not one in a hundred would suppose that he would be covered * * * only as of the

date of approval. * * A man must indeed read what he signs, and he is charged, if he does not; but insurers who seek to impose upon words of common speech an esoteric significance intelligible only to their craft, must bear the burden of any resulting confusion' ''.

In that case the receipt was found to be ambiguous and, despite the fact that the insurer had not accepted the application and was still corresponding about medical findings and had not issued a policy, a verdict in favor of the beneficiary was sustained. The opinion contains an instructive analysis of similar cases as well as an interesting discussion of the Tennessee cases of McLendon v. Woodmen of the World, 106 Tenn. 695, 64 S. W. 36, 52 L. R. A. 444; Woodfin v. Neal, 16 Tenn. App. 481, 65 S. W. (2d) 212 and National Life & Accident Ins. Co. v. Fox, 165 Tenn. 264, 54 S. W. (2d) 951, all of which were, we think properly, found to be distinguishable, since the applications in all of them were clear and unambiguous. Arnold v. Locomotive Engineers Mutual Life & Accident Ins. Ass'n, 30 Tenn. App. 166, 204 S. W. (2d) 191, hereinafter discussed, also involved an application containing no ambiguity or conflicting provisions.

A case not unlike this case, except that the terms of the application were more favorable to the Company, was before the court in Halle v. New York Life Ins. Co., 58 S. W. 822, 823, 22 Ky. Law Rep. 740. In that case the conditional receipt stipulated that the insurance should begin on the date of the receipt ''provided that said application be accepted by said company, and that a policy be issued by virtue thereof''. The company without either accepting or rejecting the application sent a

policy containing several changes which the applicant declined to accept. The company then wrote the applicant that it had reconsidered his application and was willing to approve it but, in the meantime and before the letter was written, the applicant had died suddenly. In holding the company liable the court said:

"The company, on receiving the application in this case, might have accepted or rejected it. It was bound to do one thing or the other, or else prolong its liability while considering what it might do toward getting a more favorable contract with the applicant. We think the simple meaning of the receipt is that the applicant should stand insured unless the insurance should be rejected."

In the later case of Northwestern Mutual Life Ins. Co. v. Neafus, 145 Ky. 563, 140 S. W. 1026, 36 L. R. A., N. S., 1211, the same court stated that it was not intended in the former case to lay down the broad rule that delay in acting on the application would alone make the company liable. To the same effect see McClendon v. Woodmen of the World, 106 Tenn. 695, 696, 64 S. W. 36, 52 L. R. A. 444.

In connection with an elaborate annotation dealing with the general subject of interim or temporary insurance, beginning at p. 943, 2 A. L. R. (2d) it is said (p. 967):

"In a number of cases, mostly of recent origin, it has been held that a receipt stating that the insurance shall be in force from its date provided the application is approved and accepted at the home office of the insurer, is effective in providing protection to the applicant until the application is ap-

proved, on the ground of the assumed intention of the parties to this effect."

A number of cases are cited in support of the rule. However, our own case of Arnold v. Locomotive Engineers Mutual Life & Accident Ins. Ass'n, supra, 30 Tenn. App. 166, 204 S. W. (2d) 191, held to the contrary on an application which clearly and unequivocally stated that coverage should not take effect until the application should be approved at the home office.

We also recognize that many cases hold that a counter offer to issue a different policy or to issue the policy at a higher premium rate is in effect a rejection of the application which operates to terminate any liability under the receipt. See above annotation p. 981.

██ None of these cases is applicable here because in this case the receipt is ambiguous and under a proper construction of the receipt the applicant under Condition 4 was to have the right to accept or reject any such counter offer before the company's liability under the receipt would terminate. As so well pointed out at page 959 of the annotation, supra, the reports contain a veritable maze of cases involving different terminology in the receipts involved and, in the final analysis, the question is one of construction with all ambiguities to be resolved in favor of the applicant (Ib. 955).

As in Arnold v. Locomotive Engineers etc. Ins. Ass'n, supra, defendant could have plainly stated that no insurance would become effective until it acted on the application. The phraseology of the receipt, however, is so confusing, conflicting and ambiguous as to defy complete understanding even by a trained legal mind such as that of the trial judge in this case. We confess a like inability

to understand and reconcile all of its provisions. As remarked by Judge Learned Hand in the Gaunt case, supra, we do not think the resulting burden should fall on the applicant.

We agree that the quetsion of ambiguity should have been determined by the court and only the meaning of the receipt left to the jury. But, since we hold the receipt ambiguous as the jury manifestly found, this was harmless error not affecting the result.

It is next said the suit is not upon the receipt but upon the policy which was never delivered. It is true the receipt is not mentioned in the declaration. However, it was specifically relied upon in the replication upon which defendant joined issue and all parties throughout the taking of depositions and the trial court understood that the receipt was relied upon by the plaintiff.

After charging the jury, the Court inquired of counsel if there were any special requests. Whereupon the jury was excused and counsel for defendant excepted to the Court having charged the jury as to its liability on the receipt, not because it had not been properly pleaded but because the agent had failed to deliver it when the premium was paid. The question of pleading is purely technical and, we think, largely an afterthought. Defendant was in no way taken by surprise or injured. To avoid a new trial which we would otherwise grant, we treat the replication as an amendment to the declaration, applying the rule of D. M. Rose & Company v. Dysart, 8 Tenn. App. 325, where it was held that, even though meager, if under the pleadings each party understood the theory on which the other was proceeding and it was so tried in the trial court, the case will not be reversed on account of insufficient pleadings.

■ It is insisted the court erred in charging the jury the receipt was to be given the meaning "which an ordinarily prudent person applying for insurance would give the same terms and conditions." This was substantially the rule followed in Gaunt v. John Hancock Mutual Life Insurance Company, supra, 2 Cir., 160 F. (2d) 599, where the court held the question to be whether the ordinary person applying for insurance, taking the application as a whole, would believe coverage was to be delayed until final approval by the insurer. See also Western & Southern Life Ins. Co. v. Vale, 213 Ind. 601, 12 N. E. (2d) 350. Bearing in mind that the Court in giving this charge was dealing with an ambiguous contract written by defendant in terms of its own choosing, we think there was no error in this charge.

■ As to the imposition of the penalty, as recently pointed out in Palatine Ins. Co. v. E. K. Hardison Seed Co., 42 Tenn. App. 388, 303 S. W. (2d) 742, under the statute, T.C.A. sec. 56-1105, the jury exercises a sound discretion in the allowance of the penalty. We think there was no abuse of discretion in this case. If the company's agent had promptly tendered delivery of the policy when it arrived in Knoxville instead of withholding delivery for reasons of its own, the applicant would have been compelled either to accept it at the higher premium or reject it. In either event the question of liability would have been put to rest before Mrs. Thompson's death without a trial.

Other questions made by the assignments of error have been considered and found without merit and judgment is affirmed.

Hale and Howard, JJ., concur.