**ESTATE OF Wilma R. WILSON, Penny Wilson, and Edna Poor, Plaintiffs–Appellees,**

v.

**ARLINGTON AUTO SALES, INC., Defendant–Appellee,**

v.

**WESTERN PIONEER LIFE INS. CO. and Roseberry & Assoc., Defendants–Appellants.**

Court of Appeals of Tennessee, Eastern Section.

June 18, 1987.

Rehearing Denied Aug. 18, 1987.

Permission to Appeal Denied by Supreme Court Nov. 16, 1987.

William P. Biddle, III and H. Chris Trew, Athens, for defendants-appellants.

James H. London and W. Dale Amburn, Knoxville, for defendant-appellee.

David B. Maxwell, Sevierville, for plaintiffs-appellees.

OPINION

ANDERSON, Judge.

On Saturday, September 17, 1983, minor Penny Wilson went to Arlington Chrysler–Plymouth–Dodge[1] ("Arlington") with her aunt and uncle, Edna and Gordon Poor, to look for an automobile for Penny's use. A 1984 Plymouth Turismo was selected and Penny's mother, Wilma Wilson, who was unable to make the trip that day, was to co-purchase the automobile with Ms. Poor. Ms. Wilson had been ill with cancer as early as 1975, and had been receiving chemotherapy treatments during the period immediately preceding the events here. She, Penny, and the Poors all were concerned that her illness would prevent her obtaining credit life insurance on a loan to finance the automobile purchase.

The Poors and Penny communicated their concerns and Ms. Wilson's medical history to Donna Henderson, Arlington's finance and insurance manager. They indicated that they would not buy the automobile unless they could obtain a credit life insurance policy on Ms. Wilson. Ms. Henderson said that she thought that Ms. Wilson could be covered by a credit life policy and that she would check to see.

Later that Saturday, Ms. Henderson discussed the problem with Steve Hall, Arlington's vice-president and licensed credit life insurance agent for Western Pioneer. She informed him that, based on her conversation with Penny and the Poors about Ms. Wilson's medical history, she thought a credit life policy could be issued that would exclude benefits only if Ms. Wilson died within six months of its issuance. Although they had yet to see Ms. Wilson, Ms. Henderson and Mr. Hall agreed that they would write the policy. Ms. Henderson decided further to confirm the six-month exclusion by checking with Roseberry and Associates ("Roseberry"), the agent of Western Pioneer with whom Arlington had negotiated its agency for Western Pioneer Life Insurance Company ("Western Pioneer").

Typically, Roseberry served as a conduit for communication between Western Pioneer and its selling agents. Roseberry provided Arlington perfunctory instructions

---

1. Now Arlington Auto Sales, Inc.

for writing Western Pioneer's credit life policies, but provided no training or guidelines regarding how to determine a potential policyholder's health status.

The agency contract between Arlington and Western Pioneer conferred sole authority on Arlington to determine whether potential policyholders were in sound health. It read as follows:

> The Agent shall solicit only debtors of the Creditor who appear to the Agent to be in sound health and are actively employed for insurance to cover only the indebtedness as stated in the individual note or agreement between the debtor and the Creditor. It is not the purpose of the Company to provide coverage for those who, by reason of advanced age or physical disability, would be unable to secure coverage elsewhere. Therefore, each insured debtor must be physically able to perform the usual duties of his livelihood at the time coverage is granted. In the granting of coverage, the Company is without direct and personal knowledge of the physical condition of the debtor and relies upon the representations of the Agent in this regard.

On Monday, September 19, 1983, Ms. Wilson, Ms. Poor, and Penny returned to Arlington. Ms. Henderson informed them —as her checking with Roseberry had confirmed—that the credit life policy could be issued on Ms. Wilson, but that it would provide no coverage if Ms. Wilson died within six months of the policy's being issued. Based on that reassurance, Ms. Poor contributed $500, and Ms. Wilson contributed $500 and an automobile trade-in worth $700, to the downpayment on the 1984 Plymouth. They then co-signed the loan papers that Arlington had arranged through a repurchase agreement with the First Tennessee Bank of Maryville ("First Tennessee"), and the sale was completed. Ms. Wilson, Ms. Poor, and Penny were not given copies of, and neither saw nor signed, the credit life insurance policy. Ms. Henderson, following Arlington's standard procedure, filled out the policy infor-

mation after the purchasers had left with their new Plymouth automobile. The credit life policy provided the following in a paragraph on the back of the first of its four copies:

> EXCLUSION FOR DEATH CLAIMS— Benefits provided under this policy for death of the Insured(s) are not applicable when one or more of the following circumstances exist: ... the death results from a pre-existing illness, disease or physical condition for which the debtor(s) received medical advice, consultation or treatment during the twelve months immediately preceding the effective date of the debtor's coverage and which would ordinarily be expected to affect materially the debtor's health during the period of coverage, provided, however, that after coverage has been in effect for six months *or for twelve months if this policy is issued for a term of greater than three years*, this pre-existing exclusion clause shall not operate to deny coverage for any death thereafter; ....

(emphasis added). The loan financing the automobile purchase was for a term of 48 months.

On April 8, 1984, some seven months after the issuance of the credit life insurance policy, Ms. Wilson died. On August 22, 1984, following repeated demands from First Tennessee, Arlington, and the Plaintiffs' attorney, Western Pioneer refused coverage under the "Exclusions for Death Claims" paragraph on the back of the first page of the policy form. Western Pioneer asserted that in its investigation after Ms. Wilson's death, it discovered that at the time of contracting Ms. Wilson "had a pre-existing condition that could materially affect her health during the term of coverage" and that information about Ms. Wilson's cancer had not been made available to Western Pioneer at the time of contracting.

A suit was brought against Arlington by the Estate of Wilma Wilson, Penny Wilson, and Edna Poor for the insurance benefits. Arlington filed a third-party complaint against both Western Pioneer and Roseber-

ry, who were added as Defendants by the Plaintiffs. Western Pioneer and Roseberry then cross-claimed against Arlington and filed a third-party complaint against Donna Henderson and Steve Hall.

A jury was impaneled and heard the suit for one day. Thereafter, the jury was discharged by agreement of the parties and the suit was heard by the trial court.

The trial court found that the only limitation on Ms. Wilson's credit life insurance agreement with Western Pioneer was an exclusion of benefits should she not live for six months following the date of purchase of the policy; that the Plaintiffs relied on that limitation in purchasing the policy and the automobile; that it was ordinarily and customarily within the discretion of Arlington to decide whether to cover particular debtors; and that Arlington used that discretion in issuing the policy to Ms. Wilson, with knowledge of all the pertinent facts and circumstances regarding her health.

The trial court determined that Western Pioneer had wrongfully, fraudulently, and in bad faith denied the policy coverage after Ms. Wilson's death, and that as a result of Western Pioneer's action, Penny Wilson had been "unjustly deprived of the real and effective use of the automobile purchased for her" and had been "wrongfully treated in connection with the continuing encumbrance of a lien" against the automobile that would have been released had Western Pioneer timely paid the claim. In addition, the trial court concluded that the Plaintiffs were "classic examples of innocent consumers being the victim of grave and unfair or deceptive acts or practices anticipated by and covered under the Tennessee Consumer Protection Act of 1977." The trial court also concluded that Western Pioneer's bad-faith refusal to pay the claim had inflicted additional expense, loss, and injury upon the holder of the policy. The court, therefore, imposed additional liability upon Western Pioneer under the statutory provisions of T.C.A. § 56–7–105. Finally, the trial court determined that Arlington had acted in good faith, was within the scope of

its agency, and was entitled to compensation from Western Pioneer for its out-of-pocket expenses in defending the suit.

The trial court awarded $750 to the estate, $12,250 to Penny Wilson—subject to a lien in favor of First Tennessee for the amount due on the remainder of the automobile loan—and $3,250 to Arlington. The trial court dismissed all other actions against all other parties and taxed the costs against Western Pioneer.

Western Pioneer presents the following issues for review:

I. Whether the deposition of Western Pioneer's medical expert should have been admitted;

II. Whether the testimony of Western Pioneer's corporate officer should have been admitted;

III. Whether First Tennessee was an indispensable party to this action;

IV. Whether the provisions of the Tennessee Consumer Protection Act of 1977, T.C.A. § 47–18–101, et seq., were applied by the trial court in reaching its judgment;

V. Whether Western Pioneer was estopped to apply the "Exclusions for Death Claims" paragraph of the insurance certificate;

VI. Whether the award of $12,250 to Penny Wilson was excessive;

VII. Whether the trial court erred in awarding $750 to the estate under T.C.A. § 56–7–105, "Additional liability upon insurers for failure to pay promptly insurance losses when refusal is not in good faith," and

VIII. Whether the trial court erred in ordering Western Pioneer to pay Arlington's attorney fees and in dismissing Western Pioneer's cross-claim against Arlington.

Our review of the findings of fact by the trial court is de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise. *Tenn.R.App.P.* 13(d). In addition, "[t]he

review of the amount of a non-jury judgment for damages is governed by T.C.A. § [27–3–103]. Therefore, there is a presumption that the amount of the judgment of the Trial Court is correct unless the evidence preponderates otherwise." *Smith v. Bullington*, 499 S.W.2d 649, 661 (Tenn. App.1973).

## I.

■ The parties argue whether the deposition of a Dr. Gleaves, which addresses the degree to which Ms. Wilson had suffered cancer, should have been admitted at trial. They dispute whether the deposition was taken with proper notice and whether subpoena had issued summoning Dr. Gleaves to trial. Although the pleadings suggest an issue whether Ms. Wilson's death was due to the same type of cancer for which she had previously been treated, Appellants did not pursue this issue at trial. The parties agree that Ms. Wilson's death was caused by the cancer that Appellants had contemplated in attempting to procure Ms. Wilson's credit life insurance policy. There is thus no issue in this case regarding the existence of Ms. Wilson's cancer or the degree to which she suffered from it. In Tennessee, " '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." (citations omitted). *State v. Banks*, 564 S.W.2d 947, 949 (Tenn. 1978). Here, because the parties agree about the existence of Ms. Wilson's cancer, the medical expert's evidence regarding the degree to which she suffered from it would not make the existence of it any more or less probable.

## II.

■ Western Pioneer asserts that the trial court erred in excluding the testimony of Sherman Lay, an officer of Western Pioneer. The only offer of proof at trial was this: "He's here to introduce the claim form." We note that the form was introduced into evidence by other means. The trial court excluded Mr. Lay's testimony because Western Pioneer had failed to follow local rules in submitting his name as a witness to Appellees before trial. We have said that:

> [t]he Trial Court has authority to make its own rules and accordingly may waive or abolish them if it chooses. This Court will not reverse a Trial Judge for waiving a local rule absent the clearest showing of an abuse of discretion and that such waiver was the clear cause of a miscarriage of justice.

*Killinger v. Perry*, 620 S.W.2d 525 (Tenn. App.1981). For the same reason, we will not reverse a trial court for enforcing a local rule, especially where, as here, no harm results.

## III.

■ Western Pioneer argues that the trial court erred in failing to join First Tennessee as a party. We do not agree. The Tennessee Rules of Civil Procedure provide that

> [a] person who is subject to the jurisdiction of the court shall be joined as a party if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest, or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of this claimed interest....

Rule 19.01. Here, First Tennessee's interest was more than adequately protected without its being joined as a party. The trial court recognized First Tennessee's right to the remaining payments and interest by impressing a lien for the amount due under the contract. In addition, under its repurchase agreement with Arlington, First Tennessee had the right to repossess the vehicle itself or to compel Arlington to

assume payment of the remainder of the outstanding balance. Complete relief was accorded among the parties, and neither the interest of First Tennessee nor the interests of any of the parties suffered from First Tennessee's absence in this action.

### IV.

■ Western Pioneer also takes issue with the trial court's discussion of the provisions of the Tennessee Consumer Protection Act of 1977, T.C.A. § 47–18–101, et seq. (1984). The Tennessee Rules of Civil Procedure provide that

> [e]very pleading stating a claim or defense relying upon the violation of a statute shall, in a separate count or paragraph, either specifically refer to the statute or state all of the facts necessary to constitute such a breach so that the other party can be duly apprised of the statutory violation charged ... The manner in which violation of any statute, ordinance or regulation is claimed shall be set forth.

Rule 8.05(1). Although the Act includes in its non-limiting list of unfair or deceptive acts or practices the act of "[e]ngaging in any other act or practice which is deceptive to the consumer," § 47–18–104(b)(21), Plaintiffs' pleading breach of contract and tortious misrepresentation does not provide sufficient notice to allow the Defendant to prepare a defense to the statutory violation. It is apparent, however, that the trial court did not rely upon the statute in awarding damages, as we discuss more fully below. The trial court's reference to the statute was inappropriate in light of the pleadings, but did not constitute reversible error.

### V.

■ Western Pioneer asserts that the trial court erred in finding Western Pioneer estopped to deny coverage by its failing to investigate Ms. Wilson's medical background until after her death. Western Pioneer further asserts that the "Exclusions for Death Claims" paragraph was valid and that the trial court erred in failing to apply it. We disagree.

It has long been held in Tennessee that an agent's assertions regarding insurance coverage upon which a policyholder relies will estop by waiver the insurance company from denying coverage. *See generally, Henry v. Southern Fire & Casualty Co.,* 46 Tenn.App. 335, 330 S.W.2d 18 (1958). *See also,* T.C.A. § 56–6–124 (1980). As this Court held in *American General Life Insurance Co. v. Gilbert,* 595 S.W.2d 83 (Tenn.App.1979),

> the knowledge of the soliciting agent is imputed to the insurer.... The only exception, when the agent's knowledge is not imputed to the insurance company, is where "the third party [is] acquainted with the circumstances plainly indicating that the agent would not advise his principal." *DeFord v. National Life & Accident Insurance Co.,* 182 Tenn. 225, 262, 185 S.W.2d 617, 620 (1945).

595 S.W.2d at 87.

Western Pioneer maintains that this case falls under the exception in *DeFord.* Western Pioneer ignores, however, that fewer than three years after *DeFord,* the Tennessee Supreme Court limited that case to its facts, explaining that "the principle to which we gave our approval in the *DeFord* case is grounded upon *actual fraud* between the insured and the agent of the company which results in the issuance of a policy of insurance that would not have been written and delivered had the true facts been disclosed." *Industrial Life & Health Insurance Co. v. Trinkle,* 185 Tenn. 434, 436–437, 206 S.W.2d 414, 415 (1947) (emphasis added). *Trinkle* also restated the continuing policy of Tennessee "that an agent acting within the general scope of his apparent authority, though exceeding his authority, binds his principal." 185 Tenn. at 436, 206 S.W.2d at 415.

In the instant case, there is not a shred of evidence that the Plaintiffs communicated anything but the absolute truth regarding Ms. Wilson's cancer to Western Pio-

neer's agent, Arlington. Whether Arlington communicated this information to Western Pioneer does not in the least affect Plaintiffs' rights under the policy. The question whether Western Pioneer may be indemnified by Arlington's actions —which we discuss below—is an entirely separate issue from Western Pioneer's being estopped from denying this claim. The trial court correctly found that the only condition in the policy purchased by Ms. Wilson was the preclusion of coverage should she have died within six months of the policy's being issued. The policy application itself was never communicated to Ms. Wilson, and the conditions printed upon it, including the "Exclusions for Death Claims" paragraph, were never part of the contract for which she bargained and paid consideration.

We also find that the cases regarding an insured's failure to read an application for insurance do not apply here. The only printed material that Ms. Wilson saw regarding her credit life insurance policy was the Consumer Credit Contract and Security Agreement that Ms. Wilson signed on the day she purchased the automobile, and that contract included only a box listing the premium cost and another box with the words "I want credit life insurance" under which Ms. Wilson's signature appears. That document and the representations by Arlington to Ms. Wilson regarding coverage comprise the entire credit life insurance contract between Ms. Wilson and Western Pioneer. Like the petitioner in *Howard v. Haven*, 198 Tenn. 572, 281 S.W.2d 480 (1955), Western Pioneer, "having sent out its agent clothed with plenary powers, to represent it in a manner vital to its interest, and having accepted the fruits thereof must abide the consequences (citation omitted)." 198 Tenn. at 853, 281 S.W.2d at 485.

## VI.

Western Pioneer also takes issue with the trial court's having awarded Penny Wilson damages in the amount of $12,250.

Western Pioneer asserts that at most Penny Wilson should have been awarded only the $6,691.83 principal balance on the loan. Western Pioneer also argues that Penny Wilson has no standing to institute any action under the insurance policy here.

■ We have already noted that a valid contract of insurance was entered into by Wilma Wilson and Western Pioneer through its agent, Arlington. "In Tennessee, the requisites necessary to establish a third party beneficiary relationship are: (1) a valid contract made upon sufficient consideration between the promisor and promisee; and (2) the clear intent to have the contract operate for benefit of a third party. (citations omitted)." *United American Bank of Memphis v. Gardner*, 706 S.W.2d 639 (Tenn.App.1985). The evidence is overwhelming and uncontradicted that Penny Wilson was an intended third party beneficiary and was properly entitled to bring this action. *See also, Moore Construction v. Clarksville Dept. of Electricity*, 707 S.W.2d 1 (Tenn.App.1985), *aff'd*, 707 S.W.2d 1 (Tenn.1986).

■ There is abundant proof in the record to support the award of $12,250 to Penny Wilson. "The purpose of the remedy of damages is to put the party in as good a position as he would have been had the contract been completed, and accordingly a plaintiff may recover for the promise of performance as well as consequential damages." *Chambliss, Bahner and Crawford v. Luther*, 531 S.W.2d 108, 110 (Tenn.App.1975), *citing with approval*, 5 A. Corbin, Corbin on Contracts, § 1102 (1964). Here, as Western Pioneer admits, the damages for the remaining principal balance on the contract of sale and consumer credit contract are nearly $7,000. In addition, accumulated interest as of the date of judgment made the total due on the credit contract more than $9,000, and prejudgment interest under T.C.A. § 47-14-123 (1984) was properly demanded in the pleadings. The trial court found that Penny Wilson had been deprived of

the real and effective use of her automobile as a result of Western Pioneer's refusal to pay the claim.

We affirm the trial court's award to Penny Wilson. It is within the range of reasonableness, is not contrary to the preponderance of the evidence, and does not result from the abuse of discretion.

## VII.

■ Because of Western Pioneer's bad-faith refusal to pay the claim here, the trial court applied the provisions of T.C.A. § 56–7–105 (1980), "Additional liability upon insurers for failure to pay promptly insurance losses when refusal is not in good faith." Western Pioneer denies that it was put on notice of this statutory claim as required by *Walker v. Tennessee Farmers Mutual Insurance Co.*, 568 S.W.2d 103 (Tenn.App.1977). In *Walker*, we concluded that no formal demand for payment had ever been made and that, notwithstanding that, the defendant arguably could have had a good-faith basis for denying the claim.

The test we employed in *Walker* is from *St. Paul Fire & Marine Insurance Co. v. Kirkpatrick*, 129 Tenn. 55, 164 S.W. 1186 (1914), and is as follows:

A formal demand must be made on the insurer for the payment of the amount due after the maturity of the policy is fixed according to its terms. If, after such formal demand, the insurer fails to pay for the space of sixty days, or within the sixty days refuses to pay, then the insured may sue on the policy, or on the award, if there be one, and recover the penalty, if it appears, in addition to the lapse of time, that the refusal or failure to pay was not in good faith.

129 Tenn. at 69, 164 S.W. at 1189–90. The proof shows that timely demand for payment was made by the Plaintiffs' attorney, by First Tennessee, and by Arlington. Western Pioneer refused to pay the claim within sixty days. In addition, it was "made to appear to the court or jury trying the case that the refusal to pay said loss is not in good faith, and that such failure to pay inflicted additional expense, loss, or injury upon the holder of said policy." T.C.A. § 56–7–105(a).

The statute does not conflict with Rule 8.05(1) of the Tennessee Rules of Civil Procedure. In support, we cite Justice Brock's opinion in *Adams v. Carter County Memorial Hospital*, 548 S.W.2d 307 (Tenn.1977). There, plaintiff widow had sued for damages for the alleged wrongful death of her husband. The Court unanimously held that "it was not necessary that plaintiff expressly refer to her reliance upon the wrongful death statutes.... Plaintiff does not rely upon the violation of any statute as the basis of her cause of action; hence, Rule 8.05(1), T.R.C.P., does not apply." 548 S.W.2d at 309. Neither do Plaintiffs here rely upon the violation of any statute as the basis of their cause of action. T.C.A. § 56–7–105 merely provides the remedy of *additional* liability where an insurer has breached its duty of performing its contractual obligations in good faith.

By its contract with its agent Arlington, Western Pioneer delegated exclusively to Arlington the task of determining the health status of potential policyholders. Western Pioneer then accepted the policy premium and an application for credit life insurance unsigned by the applicants. This reasonably apprised Western Pioneer that the applicants might not be aware of terms contained in the application and that further investigation might be needed. The proof shows, however, that Arlington's standard procedure was to submit unsigned applications, and there is no proof in the record that Western Pioneer ever objected to the practice. This alone does not constitute bad faith on Western Pioneer's part. However, more than sixty days after receiving the demand for payment following Ms. Wilson's death, Western Pioneer denied coverage on the basis of its determination of the duty that it had delegated to its agent, Arlington. That denial, to have been valid, should have occurred soon after

Western Pioneer received the unsigned application and before Plaintiffs had detrimentally relied upon the assertions of Western Pioneer's agent regarding coverage. Western Pioneer, however, denied coverage without the slightest attempt to determine from either Plaintiffs or Arlington the terms of the contract that had been formed. As we have already noted, absent the collusive fraudulent intent of both the agent and the insured, an insurance agent's representations will bind the principal. There being no evidence of that intent, Western Pioneer would have discovered from the most rudimentary inquiry that a contract of insurance existed and that Western Pioneer was obligated to pay the claim.

In *American Nat'l Insurance Co. v. Thompson,* Mr. Thompson was the beneficiary of a life insurance policy on Mrs. Thompson. American National denied coverage, asserting that the policy had never been delivered during Mrs. Thompson's lifetime and that the company had never been bound by an insurance contract. The company's agent had accepted the policy premium and had forwarded it to the company. The company found that Mrs. Thompson was in a higher risk category and issued the policy but at a higher premium. The agent failed to deliver the policy and collect the additional premium until after Mrs. Thompson's death. The company then denied coverage and attempted to return the premium. The trial court found that the premium payment receipt given by the agent bound the company, and the court allowed the additional liability for the company's bad-faith refusal to pay. In affirming, this Court held that

> If the company's agent had promptly tendered delivery of the policy when it arrived in Knoxville instead of withholding delivery for reasons of its own, the applicant would have been compelled either to accept it at the higher premium or reject it. In either event the question of liability would have been put to rest before Mrs. Thompson's death without a trial.

44 Tenn.App. 627, 641, 316 S.W.2d 52, 59 (1957). Here, Western Pioneer also could have put to rest the question of liability had it timely investigated the circumstances of the unsigned application that it accepted. Its failure to do so or to pay the demand within sixty days under these circumstances was a clear manifestation of its bad faith, and it is clear that its failure "inflicted additional expense, loss, or injury upon the holder of said policy," as the trial court found. T.C.A. § 56–7–105(a) (1980).

### VIII.

The final issue in this case is whether either Western Pioneer or Arlington may be indemnified by the other. The trial court dismissed Western Pioneer's crossclaim against Arlington and ordered Western Pioneer to pay Arlington's attorney fees in this action. Western Pioneer asserts that the trial court erred in each of these determinations.

■ "The right to indemnity rests upon the principle that everyone is responsible for the consequences of his own wrong, and, if another person has been compelled to pay the damages which the wrongdoer should have paid, the latter becomes liable to the former." *Southern Coal & Coke Co. v. Beech Grove Mining Co.,* 53 Tenn. App. 108, 116, 381 S.W.2d 299, 302 (1963), *cited with approval in Cocke County Bd. of Highway Comm'rs v. Newport Util. Bd.,* 690 S.W.2d 231, 237–38 (Tenn.1985). Western Pioneer asserts that Arlington, through its employees Hall and Henderson, breached its duty of loyalty and due care to Western Pioneer and that Arlington therefore should indemnify Western Pioneer in this action. The trial court did not find a breach of duty and we do not think that the evidence preponderates otherwise. The evidence shows that Western Pioneer, through its soliciting agent Roseberry, provided Arlington only minimal training in writing policies, and provided no specific instructions in determining the health status of prospective policyholders. The agency agreement between Arlington and Western Pioneer, however, clearly authorizes Arlington to "solicit only debtors who

appear *to the agent* to be in sound health and are actively employed" [2] (emphasis added). Western Pioneer may not complain of its agent's good-faith performance of this ill-defined duty, and it may not escape its obligation under the policy by seeking indemnity from Arlington. Western Pioneer knew when it accepted Ms. Wilson's application and premium that Ms. Wilson had not signed the application, and was on notice that the policy actually entered into might differ from the terms of the policy application. Western Pioneer failed to investigate, apparently as a matter of standard policy, and may not seek indemnification from its agent's good-faith performance of its agency duties when Western Pioneer itself has acted negligently and in bad faith. The "wrong" here is Western Pioneer's, and Arlington will not be compelled to pay for the consequences of Western Pioneer's own wrong.

■ We find no error in the trial court's awarding Arlington its attorney fees. The trial court found that Arlington had acted in good faith and within the scope of its agency. Western Pioneer correctly cites the general rule that attorney fees are not recoverable absent statutory or contractual authority; however, as Justice Brock wrote in *Pullman Standard v. Abex Corp.*,

> we recognize an exception to that rule and hold that the right of indemnity which arises by operation of law, based upon the relationship of the parties [citation omitted], includes the right to recover attorneys' fees and other litigation costs which have been incurred by the indemnitee in litigation with a third party.

693 S.W.2d 336, 338 (Tenn.1985). Had Western Pioneer timely paid the claim in good faith, Arlington would not have had to undergo the expense of defending itself at trial. Arlington's right to recover is "like the right of the indemnitee to be indemnified for any judgment or settlement it pays, based upon the relationship be-

tween the parties and their respective degrees of fault." *Id.*, at 339.

Based upon all the evidence before it at trial, the trial court concluded that Western Pioneer had wrongfully refused to pay the claim and that Arlington had acted in good faith within the scope of its authority. We agree. Based upon the respective degrees of fault of Western Pioneer and Arlington, the trial court correctly awarded Arlington its attorney fees. However, the only evidence in the record of Arlington's attorney fees is that they totaled $3,000, and we reduce the trial court's award to Arlington to that figure.

The judgment of the trial court is affirmed, as modified, and this cause is remanded. The costs of this appeal are taxed to Western Pioneer.

SANDERS, P.J., (E.S.), concurs.

DUNCAN, Special Judge, did not participate in decision.

---

**2.** Since Ms. Wilson's policy coverage was later denied solely because of her medical history at

the time of contracting, her employment status is not at issue here.