89 F.3d 833
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Effie L. GIBSON, Guardian and next-friend of Robert Joseph
Spurlock, a minor, Plaintiff-Appellant,
v.
COMMONWEALTH INSURANCE COMPANY, Defendant-Appellee.
 No. 95-5629.
 United States Court of Appeals, Sixth Circuit.
 June 4, 1996.
 
 BEFORE: MARTIN, JONES, and RYAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff Effie L. Gibson brought this diversity action on behalf of her grandson, Robert Joseph Spurlock, claiming the improper denial of benefits under an insurance policy allegedly issued to her daughter, Robert's mother, Pamela Spurlock, under which Robert was the named beneficiary. The district court found that the life insurance policy intended for Pamela Spurlock never became effective and entered a judgment for the Defendant Commonwealth Insurance Company ("Commonwealth"). We agree and therefore affirm.
 
 
 2
 * This case began when Commonwealth insurance salesman M.J. Dickson was introduced to Ms. Spurlock at her neighbor's house. Ms. Spurlock made a subsequent appointment with Mr. Dickson to discuss a life insurance policy. On May 4, 1993, Ms. Spurlock met with Mr. Dickson and applied for a policy with Commonwealth in the amount of $100,000, naming her son as the beneficiary. Mr. Dickson asked Ms. Spurlock a series of questions during the application process--some concerning her medical history--and filled in the information on the application. Thereafter, Ms. Spurlock signed the application and paid the policy's first month's premium of $59.00. Mr. Dickson gave Ms. Spurlock a receipt for her payment which described the "effective date" of the policy.
 
 
 3
 The "agent's report" section of the application, which apparently was not completed in Ms. Spurlock's presence, indicates that Mr. Dickson did not request a medical examination.
 
 
 4
 At trial, however, Mr. Dickson testified that at the time he took the application he informed Ms. Spurlock that a blood profile would be necessary. It is Commonwealth's policy to require a blood profile on all applicants age sixteen and over who apply for insurance in the amount of $100,000 or more. About one week after submission of the application, the blood profile still had not been completed and the underwriting department of Commonwealth wrote Mr. Dickson to urge him to have the profile performed. Mr. Dickson assigned Jeff Roberts, a paramedic, to perform the requested tests on Ms. Spurlock. Ms. Spurlock made an appointment with Mr. Roberts; however, she was unable to keep it. Subsequently, Mr. Dickson visited Ms. Spurlock, at which time Ms. Spurlock stated she was going to have the blood test the next morning. She did not.
 
 
 5
 On June 7, 1993, Ms. Spurlock was murdered by unknown assailants. As a result, the blood profile was never obtained. Upon learning of her death, Commonwealth terminated the application and on July 7 attempted to refund Ms. Spurlock (then deceased) her $59.00 permium. One year later, Commonwealth sent Ms. Gibson a letter dated June 8, 1994, which explained that because "the routine medical requirement of a blood profile was not fulfilled, coverage did not become effective and [the] company's liability [was] limited to a refund of premiums paid." J.A. at 41. On June 21, 1994, Ms. Gibson filed a claim for death benefits. Commonwealth denied the claim and insisted that a policy was never issued.
 
 
 6
 Ms. Gibson sued Commonwealth for the face value of the policy, claiming that the policy took effect when Ms. Spurlock paid Mr. Dickson the $59.00 premium. To the contrary, Commonwealth asserted that the policy never went into effect because the blood profile was never completed. A bench trial was held on February 22, 1995. The district court found that the language on the receipt was unambiguous in defining the "effective date" of the policy and that Ms. Spurlock never met the requisite conditions to make the policy effective. The court awarded judgment to Commonwealth. Plaintiff timely appeals, asserting that the decision of the district court was in error and that she is entitled to the face value of the policy plus interest, as well as a 25% penalty for bad faith.
 
 II
 
 7
 First, we must determine whether the language on the receipt was ambiguous. We do so de novo. Tennessee Consol. Coal Co. v. United Mine Workers of America, 416 F.2d 1192, 1198 (6th Cir.1969), cert. denied, 397 U.S. 964 (1970); see generally American Nat'l Ins. Co. v. J.C. Thompson, 316 S.W.2d 52, 58 (Tenn.Ct.App.1957) (reviewing ambiguity of insurance terms under Tennessee law de novo ). The district court's findings of fact, however, will not be disturbed absent a finding of clear error. Fed.R.Civ.Proc. 52(a); Heights Community Congress v. Hilltop Realty, Inc., 774 F.2d 135, 140 (6th Cir.1985), cert. denied, 475 U.S. 1019 (1986).
 
 
 8
 Plaintiff argues that: (1) the receipt given to Ms. Spurlock was ambiguous; (2) Ms. Spurlock was under no requirement to undergo an exam, or at least, was unaware that failure to submit to a blood test would block the insurance from taking effect; and (3) as a result of the ambiguity of the receipt, Commonwealth is liable on the policy. Conversely, Commonwealth asserts that the receipt was unambiguous in establishing the effective date of the policy as the later of the date of the receipt or the date of the last required medical exam. Commonwealth also avers that the policy did not become effective because the required blood profile was never completed and Ms. Spurlock understood the requirement of the blood profile.
 
 
 9
 The language on the conditional receipt, in pertinent part, read:
 
 
 10
 EFFECTIVE DATE--The "effective date" is the latest of: (1) the date of this receipt, or (2) the date when the last required medical exam is completed, or (3) any date of issue requested in the application.
 
 
 11
 The district court found this language to be unambiguous in establishing the effective date of the policy as the date when the last required medical exam was completed. The court then went on to find that the last required medical exam--the blood profile--was never completed and as a consequence the policy never became effective. We agree.
 
 
 12
 If a receipt is ambiguous, the proposed insured is entitled to the interpretation most favorable to her, and usually ambiguous language on the receipt will result in a contract for temporary "interim" insurance, creating liability in the event that the applicant died before the application was acted upon. See American Nat'l Ins. v. J.C. Thompson, 316 S.W.2d at 56; Liberty National Life Ins. Co. v. Hamilton, 237 F.2d 235, 237 (6th Cir.1956). It is equally true, however, that if the application or receipt unambiguously requires that insurance not take effect until certain contingencies, then insurance does not take effect until after the contingencies are met. Seals v. Appalachian Nat'l Life Ins. Co., 597 S.W.2d 904, 907 (Tenn.Ct.App.1979); Arnold v. Locomotive Engr's Mut. Life & Acc. Ins. Ass'n, 204 S.W.2d 191, 194 (Tenn.Ct.App.1946); McLendon v. Woodmen of the World, 64 S.W. 36, 39-40 (Tenn.1901).
 
 
 13
 The receipt in this case specifically and clearly expresses when the policy would take effect, and given the facts found by the district court, nothing in the application makes the receipt unclear. The policy would become effective either when all required medical exams were complete or when the receipt was given, whichever was later. The district court was correct in finding that the receipt was unambiguous as a matter of law.
 
 
 14
 Plaintiff next argues, apparently in an attempt to appraise the receipt as ambiguous, that Ms. Spurlock was not aware that a failure to complete the blood profile would leave her without insurance. It is uncontroverted that Commonwealth required a blood profile of all applicants over 16 years old desiring policies of $100,000. In this case the blood profile was the required medical exam, after the completion of which, the policy would become effective. Ms. Spurlock was asked for a blood profile more than once and it was not completed. Was Ms. Spurlock aware that she did not have insurance pending the completion of the blood profile? The district court found that she was at least aware that a blood profile was required. That finding is not clearly erroneous. Further, Ms. Spurlock's knowledge, or lack thereof, would not make the language of the receipt ambiguous since its plain meaning was clear on its face.[1]
 
 
 15
 Finally, the district court's other factual determinations were not clearly erroneous. Based on the information and testimony provided, it is entirely reasonable for the district court to conclude: (1) Ms. Spurlock was not aware of the section of the application noting that a medical exam was not requested and consequently did not rely on that representation; (2) Ms. Spurlock was aware that she would have to submit a blood profile; (3) company policy required blood profiles before activation of an insurance policy; and (4) Ms. Spurlock did not complete the required medical examination.
 
 III
 
 16
 Pursuant to the foregoing, we AFFIRM the district court's findings of fact, conclusions of law and judgment.
 
 
 
 [1]
 At oral argument Plaintiff attempted to present an equitable estoppel theory of recovery based on Ms. Spurlock's alleged lack of understanding of the receipt and application process. Plaintiff, however, did not plead, argue, or present evidence on this theory before the district court. Accordingly, it is waived. Singleton v. Wulff, 428 U.S. 106, 120 (1976). Nonetheless, we have considered it and do not find it persuasive