**AMERICAN GENERAL LIFE
INSURANCE COMPANY,
Plaintiff-Appellant,**

v.

**Carolyn GILBERT et al.,
Defendant-Appellant.**

Court of Appeals of Tennessee,
Eastern Section.

Nov. 2, 1979.

Permission to Appeal Denied by Supreme
Court Feb. 19, 1980.

Charles G. Taylor, III, Knoxville (Ayres, Parkey, Skaggs & Ware, Knoxville, of counsel), for plaintiff-appellant.

Merle Johnson, Knoxville, for defendant-appellant.

## OPINION

FRANKS, Judge.

Plaintiff sued to void a policy of insurance issued on the life of decedent, on the basis decedent had made misrepresentations in the application for insurance and at the time the policy was delivered. The defendant beneficiary counter-claimed, seeking benefits in accordance with the terms of the policy.

The chancellor, without a jury, determined that no material misrepresentations were made in the written application but found decedent "knowingly failed to disclose [a] material fact affecting the risk" at the time the policy was delivered, and voided the policy.

Plaintiff has appealed the determination of the chancellor relative to the initial application and defendant has appealed the chancellor's voiding of the policy.

In March of 1976, deceased was approached by Basil E. Myrick, Jr., an insurance agent, who solicited decedent to purchase a policy of life insurance. The agent obtained two applications from decedent: one to the Travelers Life Insurance Company, for whom Myrick's agency was a general agent, and the other to the plaintiff, the policy to be brokered through plaintiff's agent, Johnson. Decedent signed Travelers' application on March 18, 1976, and the application to plaintiff on March 21, 1976.

On June 1, 1976, a representative of Travelers advised Myrick that an x-ray of decedent's chest had indicated a spot on decedent's lung and Travelers would not issue a policy on decedent's life unless decedent furnished, at his own expense, additional x-rays. Myrick then contacted plaintiff's agent, who advised that plaintiff would issue a policy based upon the application and, the following day, Myrick met with decedent and advised him of the determination made by Travelers and the opportunity to obtain insurance from plaintiff. At that time, decedent gave a check for approximately 10 per cent of the annual premium to the agent, payable to plaintiff. Decedent, reacting with concern to the information furnished by Travelers, was examined on June 8, 1976, by Dr. William K. Swann, a thoracic surgeon, who made additional chest x-rays. The following day, Dr. Swann met with decedent and his wife and advised decedent to enter a hospital for more tests. The chancellor found, which is supported by the record:

Dr. Swann testified that he was sure he had told Mr. Gilbert there was something abnormal in his x-rays; and at the very least the evidence establishes that Mr. Gilbert knew he had to go to the hospital for further tests because of the X-rays taken at Dr. Swann's direction.

The policy in question was issued, with the date of issue recited in the policy of June 8, 1976, and forwarded to the agent for delivery. The agent delivered the policy to deceased in the hospital on June 14, 1976, the deceased having entered the hospital for tests on June 13. At the time of delivery, the deceased executed a Policy Acceptance Acknowledgment which states, in part:

I, as the Insured and for any family member named as a proposed insured in the application, further represent that, to the best of my knowledge and belief, there has been no material change in health or in any condition or in any statement pertaining to insurability as represented in the application, or amendment thereof, a copy of which is made a part of this policy, except as stated in the space provided below:

The space was left blank and in parenthesis immediately above the space where deceased dated and signed the document is stated: "(If any change pertaining to insurability has occurred since the application date the policy may not be delivered but must be returned to the Company with full details for further underwriting consideration.)"

On June 18, Dr. Swann performed lung surgery on deceased and found an undifferentiated carcinoma; decedent died from the lung disease on July 10, 1977. Plaintiff company had no actual knowledge of decedent's lung disease until after his death.

■ At the trial, plaintiff alleged the insured's representations in the policy application with respect to having no shortness of breath, no persistent cough, no known indication of excessive use of tobacco, and a negative chest x-ray taken during the past year, were misrepresentations of facts.

The chancellor's finding on these allegations is supported by the record and we adopt from his memorandum opinion:

With respect to the first two alleged misrepresentations the specific question was asked of the insured: "Have you ever been treated or even had any known indication of: . . . shortness of breath, persistent . . . cough . . . ?" The insured answered no. There is no evidence that the insured had been treated for shortness of breath or persistent cough. Therefore, the question is whether the insured had any known indication of these conditions.

The evidence of shortness of breath is contained in a medical history taken by Dr. Avery on June 21, 1976, . . . Whatever the information in the history means, it does not show that any shortness of breath Mr. Gilbert might have had predated the insurance application. Thus the evidence fails to show a misrepresentation of shortness of breath in the application.

Defendant's evidence of persistent cough comes from a June 13, 1976 medical history. While the report shows Mr. Gilbert had a cough, it fails to show that the cough was persistent, such term being taken to mean "existing for a long or longer than usual time or continuously as defined in Websters Third New International Dictionary. Therefore, there is no misrepresentation as to persistent cough.

The third claim of misrepresentation is based upon the insured's use of tobacco. Specifically the application asked: "Have you ever been treated for or ever had any known indication of . . . Excessive use of tobacco?" The insured answered no. There is no evidence insured had ever been treated for excessive use of tobacco, so the question is whether there is evidence he had "any known indication or [sic] excessive use of tobacco." This is taken to mean: did the insured ever exhibit any symptoms, he knew were attributable to excessive smoking. The question did not make the simpler inquiry: do you use tobacco excessively? The mere showing of excessive smoking is not sufficient to prove a misrepresentation based upon the specific question asked. So considered, there is no evidence that the insured knew he had any symptoms or physical effects, caused by smoking. This is true even though he smoked one to two packs of cigarettes a day.

Dr. William K. Swann, a thoracic surgeon, testified that he attributed the insured's cough to his "excessive abuse of tobacco." However, the testimony fails to develop in any satisfactory way what indication to insured there was of excessive use of tobacco. Dr. Swann's remarks were not directed toward determining what would have been a known indication to Mr. Gilbert of excessive use of tobacco. Instead the remarks disclosed only the doctor's knowledge and opinion rather than the insured's. It was parenthetically noted that Dr. Swann testified that use of tobacco was not the cause of the insured's fatal cancer. Thus, whatever disease the insured may have had, it resulted in no indication of excessive tobacco use, known or unknown, to Mr. Gilbert.

The fourth claim of misrepresentation in the application is that in the detailed information to the insured's "yes" answer to question 6 d. that he had had an X-ray within the past five years, he responded: "Chest X-ray-neg." American claims this was false information. The X-ray had been taken by the Knox County Health Department because Mr. Gilbert worked in a restaurant, and it disclosed a calcified lesion. Dr. William K. Swann, the

only expert witness testifying to the significance of the lesion, said it was medically insignificant and in substance that the X-ray could be considered negative. If a trained thoracic surgeon considered the X-ray negative, the insured, a layman, cannot be faulted for so describing it, particularly in view of the fact that the Health Department, which had required the X-ray, raised no question as to the state of his health. There was no misrepresentation in the application with respect to the X-ray.

Defendant beneficiary argues since the Policy Acceptance Acknowledgment signed by decedent, wherein he represented his continuing good health, was not attached to the policy, it cannot be relied upon by plaintiff to defeat or void the policy, citing *T.C.A.*, § 56–1111(3) and (4).

This argument fails to distinguish between a suit to avoid an obligation under contract due to a breach and an action seeking to void a contract on the ground that the contract was fraudulently procured. *Lindsey v. Met. Life Ins. Co.*, 10 Tenn.App. 293 (1929).

The following provision is contained in the initial application signed by decedent:

The proposed Insured and the Owner, if other than the Proposed Insured, represent, each to the best of his knowledge and belief, that all statements and answers contained in this application and any amendments thereto, are true, complete and correctly recorded and expressly agreed as follows:

. . . . .

Any insurance approved by the Company for issuance as a result of this application, unless effective prior to policy delivery in the manner specified in the Conditional Receipt bearing the same number and date as this application, shall be considered in force only when a policy shall have been issued by the Company and delivered to and accepted by the Owner and the full first premium paid to and voluntarily accepted by the Company *during the condition of health of the Proposed Insured* and any Family member or Purchaser proposed to be insured, *as set forth in this application.* [Emphasis supplied.]

The general rule pertaining to the applicant's duty to disclose changes in his health occurring between the date of his application and the delivery of policy is set forth in 9 Couch on *Insurance* 2d, § 38.22, pp. 347–348:

The mutual good faith which is required in a contract of life insurance will not permit a recovery where the insured withholds or conceals material changes in the condition of his health between the date of his examination by the insurer's physician and the delivery of the policy and which is of such a nature as to affect his insurability, make him a hazardous risk and thus amount to a fraud on the insurer. For example, where one, after applying for life insurance, learns that he is afflicted with a fatal disease, his failure to disclose that information constitutes an intentional concealment of a material fact which will avoid a policy subsequently delivered in ignorance of the insured's diseased condition.

Where between the date of the application and the issuance of the policy the insured consulted a physician, who reported a serious ailment, the insured must disclose this even though there has been no change in the physical condition of the applicant after the application was made.

Tennessee decisions are in accord with the general rule. In *Harris v. Security Mutual Life Insurance Company*, 130 Tenn. 325, 170 S.W. 474 (1914), the insured suffered an attack of renal colic between the date he submitted an application for life insurance and the date of delivery of the policy. He made no effort to disclose this fact to the insurer. The insurer contended it was the insured's duty to disclose the fact of the attack and the failure to do so was such a fraud on the insurer as to vitiate the policy. The Supreme Court agreed:

The authorities, almost without exception, are in agreement upon the doctrine that an applicant for such a policy must

use due diligence to communicate to the proposing insurer facts materially affecting the risk, which arise after his application has been made and before the contract has been consummated by delivery.

.     .     .     .     .

".   .   . An intentional omission to discharge that duty perpetrates a plain fraud upon the company, which necessarily avoids the contract." 130 Tenn. at 327–8, 170 S.W. at 474–475.

*Also see Independent Life Ins. Co. v. Russell*, 18 Tenn.App. 622, 80 S.W.2d 846 (1934); *Metropolitan Life Ins. Co. v. McGowan*, 2 Tenn.App. 341 (1925).

■ Equity recognizes in all express contracts that the parties impliedly contract that neither will make to the other any material representations concerning the subject matter of the contract that are not true. While at law in order for a misrepresentation to be fraudulent, it must be made with a guilty knowledge of its falsity, but a person making an untrue statement without knowing or believing it to be untrue, and without any intent to deceive, is chargeable with actual fraud in equity. *Gibson's Suits in Chancery*, 5th Ed., vol. 2, § 978, p. 210. The Policy Acceptance Acknowledgment as executed by decedent, although not physically attached to the policy, provided a basis to void the policy by the chancellor.

A more substantial argument, however, is raised by the charge that the insurance company's agent had knowledge which, if pursued with reasonable diligence, would have led to the discovery of the true state of facts regarding the decedent's health and this knowledge is imputable to the insurance company and the company, on that basis, is deemed to have waived or estopped from asserting such forfeiture or defense. The insurance company counters that Myrick was not its agent but was actually agent for the insured. The agent, however, as a matter of law was the agent of the insurance company and not the policyholder. *T.C.A.*, § 56–824.[1]

■ By virtue of this section, the knowledge of the soliciting agent is imputed to the insurer; *American Nat. Ins. Co. v. McPhetridge*, 28 Tenn.App. 145, 187 S.W.2d 640 (1945).

The only exception, when the agent's knowledge is not imputed to the insurance company, is where "the third party [is] acquainted with the circumstances plainly indicating that the agent would not advise his principal." *DeFord v. Nat. L. & A. Ins. Co.*, 182 Tenn. 255, 262, 185 S.W.2d 617, 620 (1945). *Accord: Beasley v. Nat. Life Ins. Co.*, 190 Tenn. 227, 229 S.W.2d 146 (1950); *Hardin v. Combined Insurance Co. of America*, 528 S.W.2d 31 (Tenn.App.1975).

*DeFord* states that the exception applies when the party is acquainted with the circumstances plainly indicating the agent will not advise his principal and where his knowledge is such that, according to human nature and experience, the agent is certain to conceal the information from his principal and the agent's interest would be defeated by disclosure.

■ Implicit in the transaction between agent Myrick and deceased on June 2, was the fact that one insurance company had obtained knowledge which was a basis to decline issuance of a policy and the other company, plaintiff, had not. By a mutual effort, the agent and deceased attempted to cement the offer by transmitting a check for a part payment of the initial premium before the plaintiff learned of the questionable x-ray. When the agent delivered the policy at the hospital, he made no inquiry as to why decedent was in the hospital for testing and advised the decedent that the Policy Acceptance Acknowledgment related back to June 2, and not the date of delivery.

---

1. *T.C.A.*, § 56–824. *Agent is representative of insurer.*

Every agent or limited insurance representative who solicits or negotiates an application for insurance of any kind shall, in any controversy arising from the application for insurance or any policy issued in connection therewith between the insured or his beneficiary and the insurer be regarded as the agent of the insurer and not the insured or his beneficiary. This provision shall not affect the apparent authority of an agent.

In furtherance of this transaction is the tacit knowledge on the part of insured and agent that conditions had changed since June 2, and that the policy acknowledgment. itself required a return of the policy since a change pertaining to insurability had occurred since the application date.[2] These circumstances plainly indicate that the agent would not advise the insurance company of what he knew on visiting the hospital as to the state of decedent's health.

For the reasons herein, we resolve the issues raised by plaintiff against the plaintiff and resolve the issues raised by defendant against defendant. The judgment of the chancery court is affirmed and the costs incident to the appeals are assessed one-half to each appellant.

PARROTT, P. J. (E.S.), and GODDARD, J., concur.

---

2. Deceased's widow and beneficiary stated in regard to the execution of the Policy Acceptance Acknowledgment by deceased:

"And Mr. Myrick told him that that was— you signed here to state that that was the truth up 'til when you're applied [sic] and accepted by the insurance company."