# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

WILLIAM BLAND AND LENA BLAND,)

    Plaintiffs/Appellees,    )    Shelby Law No. 32881 T.D.

    )

**vs.**    )

    )

**ALLSTATE INSURANCE COMPANY,**  )    Appeal No. 02A01-9412-CV-00273

    )

    Defendant/Appellant.    )


APPEAL FROM THE CIRCUIT COURT OF SHELBY COUNTY
AT MEMPHIS, TENNESSEE

THE HONORABLE ROBERT A. LANIER, JUDGE

FILED

September 9, 1996

Cecil Crowson, Jr.
Appellate Court Clerk

For the Plaintiffs/Appellees:        For the Defendant/Appellant:

Alan Bryant Chambers        Bruce D. Brooke
Timothy R. Holton        Memphis, Tennessee
 Memphis, Tennessee


**AFFIRMED**


HOLLY KIRBY LILLARD, J.


CONCUR:


W. FRANK CRAWFORD, P.J., W.S.


HEWITT P. TOMLIN, JR., SR. J.

# OPINION

This is a suit brought by William Bland (Bland) against Allstate Insurance Company (Allstate) for breach of contract for failure to pay a claim under his homeowner's insurance policy. At trial, the jury found for Bland and awarded him damages under the insurance contract for the loss of his home and its contents due to a fire. Allstate argued at trial that material misrepresentations on the application, as a matter of law, warranted Allstate's decision to void Bland's policy *ab initio*. Allstate appeals the denial of its motion for directed verdict and alleges error in a number of the jury instructions. We affirm the trial court.

Bland, a real estate agent, had a homeowner's insurance policy with Liberty Mutual Insurance Company (Liberty Mutual). On June 23, 1989, Liberty Mutual sent Bland a letter informing him that, due to several recent claims, the policy would not be renewed when it expired on July 27, 1989. Bland also received a letter from his mortgage company notifying him that he would have to obtain a replacement policy for homeowner's insurance.

Bland contacted Loyal Featherstone (Featherstone), a fellow real estate agent who also sold insurance for Allstate. Bland had shared commissions with Featherstone on several real estate transactions in the past and had also referred potential insurance customers to Featherstone. Featherstone agreed to try to get coverage for Bland with Allstate.

At this point the parties' version of the facts diverge. Bland testified that he talked to Featherstone several times on the telephone, answering Featherstone's questions. Bland stated that he went to Featherstone's office on August 17, 1989. Featherstone was in a hurry, so Bland signed an application that was essentially blank. Bland asserted that the only items filled out on the form were his name and social security number and his wife's name and social security number. When Featherstone asked Bland about his loss history, Bland said that he told Featherstone about one fire loss and also told him that there were other losses, the dates of which he could not remember. According to Bland, Featherstone replied that he would turn the information Bland had given him over to the underwriters and that they would find out the rest of the information needed. Bland admitted that he never told Featherstone that Liberty Mutual had not renewed his policy but claimed that he gave Featherstone Liberty Mutual's name as previous insurer. Bland also maintained that Featherstone never asked him if he had ever had a policy canceled or not renewed. There were numerous errors on the application, but Bland claimed that

all the errors on the application were Featherstone's and maintained that he made no misrepresentations to Featherstone. On the back of the application, Bland's initials appear in a blank for the applicant's initials. Bland denied writing his initials on the application.

Allstate contended that Bland did not sign a blank application. It argued that Featherstone took the application information from Bland in person and that all the misrepresentations on the form were made by Bland to Featherstone. Allstate asserted that Bland specifically omitted telling Featherstone of the four other losses in Bland's loss history and omitted telling Featherstone that Liberty Mutual had failed to renew his homeowner's policy.

On the basis of the information in the application, Allstate issued a policy to Bland. On December 14, 1989, Bland's residence caught fire, causing massive damage to the structure and its contents.

In the ensuing investigation, Allstate learned of Bland's prior loss history and of Liberty Mutual's nonrenewal of Bland's policy with them. On January 9, 1990, an Allstate investigator, Elvis Morris (Morris), conducted a taped interview over the telephone with Bland. During this interview, Bland told Morris that he could not remember any other losses with any company besides the one fire loss listed on the application, that Featherstone had asked him about his loss history, and that the application had been taken in person. Bland later explained that he was drunk during the interview and not capable of giving accurate answers.

As a result of its investigation, Allstate voided Bland's policy *ab initio* and refused payment of the claim. Bland sued Allstate for breach of contract. At trial, the trial judge denied Allstate's motion for a directed verdict, and the jury returned a verdict in Bland's favor.

Allstate appeals to this Court on several grounds. First, Allstate claims that its motion for a directed verdict should have been granted by the trial court because the admitted misrepresentations on the application materially increased Allstate's risk of loss and warranted Allstate's decision to void the policy *ab initio*. Allstate also asserts several errors in the trial court's instructions to the jury. Allstate claims that the trial court erred in instructing the jury on the effects of signing an application in blank and on waiver and estoppel. It also contends that the trial court erred in refusing to instruct the jury on collusion between Featherstone and Bland and on the missing witness rule in respect to Featherstone's absence at trial. Finally, Allstate argues that the trial court erred in allowing Bland to testify as to what Featherstone told him

3

during their conversations.

We first consider the trial court's denial of Allstate's motion for directed verdict. When deciding a motion for directed verdict, both the trial court and the reviewing court on appeal must look to all the evidence, take the strongest legitimate view of the evidence in favor of the opponent of the motion, and allow all reasonable inferences in favor of that party. The court must discard all countervailing evidence, and if there is then any dispute as to any material fact, or any doubt as to the conclusions to be drawn from the whole evidence, the motion must be denied. *Tennessee Farmers Mut. Ins. Co. v. Hinson*, 651 S.W.2d 235 (Tenn. App. 1983). A directed verdict cannot be sustained if there is material evidence in the record which would support a verdict for the plaintiff. *Wharton Transport Corp. v. Bridges*, 606 S.W.2d 521 (Tenn. 1980).

Allstate argues that Bland made material misrepresentations on the insurance application and that these misrepresentations so increased Allstate's risk of loss as to warrant the *ab initio* voidance of the policy. Tenn. Code Ann. § 56-7-103 (1994) provides:

> No written or oral misrepresentation or warranty herein made in the negotiations of a contract or policy of insurance, or in the application therefor, by the insured or in the insured's behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter represented increases the risk of loss.

T.C.A. § 56-7-103 (1994). The truth or lack thereof of the answers to questions on an application for insurance is to be determined by the trier of fact. *Womack v. Blue Cross & Blue Shield*, 593 S.W.2d 294, 295 (Tenn. 1980). Whether or not false answers on an application increase the risk of loss for the insurance company remains a question of law for the court to determine. *Id.*

Bland admits that a number of the answers on the application were untrue, and these answers undoubtedly increased Allstate's risk of loss. The Tennessee Supreme Court has noted that " '[a]ny misrepresentation which naturally and reasonably influences the judgment of the insurer in making the contract is a misrepresentation that "increases the risk of loss" within the meaning of the statute.' " *Broyles v. Ford Life Ins. Co.*, 594 S.W.2d 691, 693 (Tenn. 1980) (quoting *Little v. Washington Nat'l Ins. Co.*, 241 S.W.2d 838, 840 (Tenn. App. 1951)). In addition, several courts have held that misrepresentations regarding the cancellation of prior insurance policies or of the refusal of an insurer to renew a policy constitute an increased risk of

4

loss to the insurer. *Medley v. Cimmaron Ins. Co.*, 514 S.W.2d 426, 428 (Tenn. 1974) (automobile policy); *Giles v. Allstate Ins. Co.*, 871 S.W.2d 154, 156 (Tenn. App. 1993) (homeowner's policy); *Milligan v. MFA Mut. Ins. Co.*, 497 S.W.2d 736, 739 (Tenn. App. 1973) (automobile policy). The misrepresentations regarding Bland's loss history and Liberty Mutual's nonrenewal increased the risk of loss to Allstate. This fact must be considered in light of Bland's claim that he signed the application in blank and that the misrepresentations on it were solely the fault of Allstate's agent, Featherstone.

Bland argues that Tenn. Code Ann. § 56-7-103 only applies to misrepresentations made by the applicant, not mistakes or misrepresentations on the part of the agent who takes the application, unless the applicant certifies the misrepresentations when he signs the application, acts in collusion with the agent, or knows or has reason to know that the agent will not divulge the true facts to his company. Thus, an applicant who innocently signs an application in blank, trusting the agent to fill in the correct information, is not responsible for misrepresentations made by the agent, even if those misrepresentations increase the risk of loss on the policy for the insurance company.

Two Tennessee decisions present somewhat similar facts. In *Hurley v. Tennessee Farmers Mutual Insurance Co.*, 922 S.W.2d 887 (Tenn. App. 1995), the plaintiff had a homeowner's policy and had previously had an automobile policy with the defendant insurance company. *Id*. at 890. The plaintiff applied with the defendant for automobile insurance. *Id.* at 889-90. After the new automobile policy went into effect, the covered automobile was stolen. *Id.* at 890. The insurance company then discovered that the application contained misrepresentations which increased the risk of loss to the company, thereby warranting denial of the claim. *Id.* The plaintiff asserted that he had signed the policy while it was blank and had never been asked any of the questions on the application. *Id.* The plaintiff prevailed at trial, and on appeal the defendant claimed it should have been granted a directed verdict based upon the material misrepresentations in the application. *Id.* at 889. The defendant conceded that "if the application was signed in blank then there were no material misrepresentations made by plaintiff which would void the policy." *Id.* at 891. This Court determined that there was a material issue of fact as to whether the application had been signed in blank and that a directed verdict was therefore inappropriate. *Id.* at 891-92. However, there was no discussion of the legal effect of an

5

applicant signing an insurance application in blank.

In *Transamerica Insurance Co. v. Koonce*, No. 116, 1986 WL 5246 (Tenn. App. May 6, 1986), the insurance company's agent, in his own handwriting, filled out an application for homeowner's insurance based on information given him by the applicant. *Id.* at *1. He then had the applicant sign both the handwritten application and a blank application. *Id.* Both applications were sent to a branch office, where another agent typed in the answers on the blank signed form, based on the handwritten form and on additional information obtained over the telephone from the applicant. *Id.* This agent then sent the typed application to the insurance company, and the company issued a policy to the applicant. *Id.* After the covered house was destroyed by fire, the company discovered that the typed application contained misrepresentations. There were material variations between the handwritten form and the typed one. *Id.* The insurance company filed for declaratory judgment to determine, among other things, who was responsible for the misrepresentations on the application. *Id.* at *2. The trial court found that the company "was aware that the material misrepresentations contained in the typed application upon which the policy was issued were made by agents of the plaintiff and that these misrepresentations could in no way be chargeable to the insured." *Id.* The trial court entered a decree against the insurance company, ordering recovery by the insured pursuant to the policy. On appeal, the insurance company did not seek review of the trial court's finding regarding the legal effect of the misrepresentations on the application. *Id.*

Of course, the knowledge of an agent is imputed to his principal. *Griffith Motors, Inc. v. Parker*, 633 S.W.2d 319, 322 (Tenn. App. 1982); *American General Life Ins. Co. v. Gilbert*, 595 S.W.2d 83, 87 (Tenn. App. 1979). In addition, "an agent acting within the general scope of his apparent authority, though exceeding his authority, binds his principal." *Industrial Life & Health Ins. Co. v. Trinkle*, 206 S.W.2d 414, 415 (Tenn. 1947). Applying this principle, if Bland answered the questions truthfully which were asked by Featherstone, any misrepresentations which Featherstone made are Allstate's responsibility.

Allstate notes that there are exceptions to the imputed knowledge rule. The knowledge of the agent is not imputed to his principal when the agent acts in his own interest or when the interest of the agent is adverse to that of the principal, making it disadvantageous for the agent to disclose the information to the principal. *Corim, Inc. v. Sam Blair Co.*, 721 S.W.2d 256, 259

6

(Tenn. App. 1986); *Griffith Motors, Inc. v. Parker*, 633 S.W.2d 319, 322 (Tenn. App. 1982). This exception does not apply, however, in those instances in which the agent is acting as the sole representative of the principal in the transaction in question. *Griffith Motors*, 633 S.W.2d at 322; *State v. Candler*, 728 S.W.2d 756, 759 (Tenn. Crim. App. 1986). The record does not clearly establish that Featherstone was acting in his own interest, an interest adverse to that of Allstate. Nevertheless, even if he were, he was clearly acting as Allstate's sole representative. There is no evidence that Bland had dealings with any other Allstate officer but Featherstone, who was invested with Allstate's authority to act as its legal representative.

Allstate also argues that the imputed knowledge rule does not apply when a third party, such as an applicant for insurance, seeks to defraud the principal:

> The rule imputing an agent's knowledge to the principal is designed to protect only those who exercise good faith and is not intended to serve as a shield for unfair dealing by the third person. The rule may not be invoked where third persons use the agent to further their own frauds upon the principal, or where the third person did not intend or expect that the agent would communicate the facts or the truth to the principal as where the third person colludes with the agent in acting adversely to the principal.

*Candler*, 728 S.W.2d at 759 (citing *DeFord v. National Life & Accident Ins. Co.*, 182 Tenn. 255, 185 S.W.2d 617 (1945)). In this case, however, there is no evidence demonstrating collusion between Bland and Featherstone and no evidence that Bland intended to defraud Allstate. There is ample proof from which the jury could find that Bland gave Featherstone the information he could remember and told Featherstone where he could discover the rest. There is no evidence that Bland knew that Featherstone would not communicate the truth to Allstate.

Tennessee case law provides only limited guidance on the legal effect of signing an application in blank. In *Hale v. Sovereign Camp Woodmen of the World*, 143 Tenn. 555, 226 S.W. 1045 (1920), an insurance applicant truthfully filled out the first page of an application and truthfully answered questions posed him by the insurance company's physician. *Id.* at 558, 560-61. The physician recorded these answers on the second page of the application, and both he and the applicant signed this page. *Id.* at 560. A third page was filled out by the physician based upon a physical examination of the applicant and was signed only by the physician. *Id.* at 558, 560. When the application reached the insurance company, though, there was false information on both the second and third page, and the signatures on both those pages turned out to be forgeries. *Id.* at 558-59. After the applicant's death, the company refused to honor the policy

7

based on the misrepresentations contained in the application. *Id.* at 557. The Court determined that the pages originally filled out by the physician had been bogus pages and that someone whom the Court could not identify had fraudulently filled out the original second and third pages, forged the signatures thereon, and sent the application to the company. *Id.* at 561, 563.

The *Hale* Court first noted that the knowledge of an agent is imputed to his principal and that this rule applies to insurance contracts. *Id.* at 561-62. The Court then pointed out that a physician is an agent of the insurance company for whom he works when he conducts a medical examination and fills out an application. *Id.* at 562-63. The knowledge of the physician gained within his limited scope of authority is imputed to his principal, even when the physician, after having been told the truth by the applicant, inserts false statements in the application. *Id.* The Court did not believe that the physician had been responsible for the fraudulent answers and forged signatures. Nevertheless, it found that either the clerk who sent the falsified application to the company was negligent in so doing or the physician had been negligent in forwarding a falsified application to the clerk. *Id.* at 563-66.

The defendant insurance company in *Hale* contended that the applicant had warranted the truth of the representations on the second page by signing statements on the first page that he attested to the truth of the information on both the first and second pages. *Id.* at 566-67. The Court found that it had been the physician's duty to procure the signature of the applicant on the second page of the application and that the applicant had been entitled to believe that the page presented him for his signature was *bona fide*, not a bogus copy. *Id.* at 567. The Court concluded:

> The defendant cannot in good conscience rely on a mistake of the deceased induced by its own agent within the scope of his authority. There are numerous cases in the books where the deceased has been held not bound by false statements contained in an application which he signed prior to its completion, and which application was filled out with fraudulent matter thereafter by the local agent of the assurer.

*Id.* at 567. So while *Hale* does not present facts identical to those in this case, it suggests that Allstate is responsible for Featherstone's misrepresentation on Bland's application.

Other Tennessee cases provide helpful background but are factually distinguishable. In *Berryhill v. Mutual Ben. Health & Accident Ass'n*, 262 S.W.2d 878 (Tenn. App. 1953), the Court upheld a verdict for an insurance applicant where he had answered the insurance agent's

questions truthfully, the agent wrote wrong answers on the application without the applicant's knowledge, there was no evidence of fraud or of collusion with the agent, and there was conflicting evidence. The jury found for the applicant. *Id.* at 880. The opinion does not state the point at which the applicant signed the application.

Cases in which courts have refused to enforce the insurance policy based on misrepresentations in the application are also factually distinguishable from the present case. Some of the cases involve situations where the applicant told the truth to the agent, the agent then filled out the application with false answers, and the applicant signed the application containing the misrepresentations without reading it. *Beasley v. Metropolitan Life Ins. Co.*, 190 Tenn. 227, 229 S.W.2d 146 (1950); *Giles v. Allstate Ins. Co.*, 871 S.W.2d 154 (Tenn. App. 1993); *Montgomery v. Reserve Life Ins. Co.*, 585 S.W.2d 620 (Tenn. App. 1979); *Hardin v. Combined Ins. Co. of Am.*, 528 S.W.2d 31 (Tenn. App. 1975). Others involve situations in which the misrepresentation originated with the insurance agent but the applicant failed to correct the information, allowed the agent to record the misrepresentation, or failed to inform the insurance company after becoming aware of the error. *Tegethoff v. Metropolitan Life Ins. Co.*, 424 S.W.2d 565 (Tenn. App. 1966); *National Life & Accident Ins. Co. v. Atwood*, 194 S.W.2d 350 (Tenn. App. 1946). Some cases present situations where the applicant had reason to know that the insurance agent was not disclosing the full facts to his company, thereby acquiescing in the fraud. *DeFord v. National Life & Accident Ins. Co.*, 182 Tenn. 255, 185 S.W.2d 617 (1945); *Tharp v. Woodmen of the World Life Ins. Soc'y*, 768 S.W.2d 701 (Tenn. App. 1989); *American Gen. Life Ins. Co. v. Gilbert*, 595 S.W.2d 83 (Tenn. App. 1979). In still other cases, the applicant, either with or without intent to deceive, gave false answers to the agent which materially increased the company's risk of loss. *Milligan v. MFA Mut. Ins. Co.*, 497 S.W.2d 736 (Tenn. App. 1973); *Jefferson Standard Life Ins. Co. v. Webb*, 406 S.W.2d 738 (Tenn. App. 1966). Finally, in some cases the applicant withheld information, either knowingly or unknowingly, which increased the risk of loss. *Broyles v. Ford Life Ins. Co.*, 594 S.W.2d 691 (Tenn. 1980); *Clingan v. Vulcan Life Ins. Co.*, 694 S.W.2d 327 (Tenn. App. 1985).

At least one treatise on insurance law provides support for Bland's position on signing an application in blank. *Couch on Insurance 2d* states that "[i]f an applicant merely signs an application in blank, an insurance agent may bind his company by filling out the blanks upon his

own motion, and without authority or direction." 4 George J. Couch, et al., *Couch on Insurance 2d* § 26A:3 (rev. vol. 1984). Under this principle, Allstate would be bound by Featherstone's actions in filling out the application Bland signed in blank.

In this case, there was sufficient evidence from which the jury could reasonably find that the applicant Bland signed the insurance application in blank and that the agent Featherstone filled out the application containing the erroneous information and omitting other significant information. There was not sufficient evidence from which the jury could find collusion between Bland and Featherstone.

After reviewing the case law and other authority, under the circumstances presented here, we conclude that the insurance policy cannot be voided based on falsehoods or errors in the application, even though they materially increase the risk of loss. The trial court is affirmed on this issue.

Allstate asserts a number of errors in the trial court's instructions to the jury. It argues that the trial court erred in giving Bland's requested instruction on estoppel because Bland did not affirmatively plead estoppel in his complaint. While estoppel is a defense that must be affirmatively plead in a defensive pleading, under Rule 8.03 of the Tennessee Rules of Civil Procedure, there is no such requirement for a complaint. We find no error in the trial court's decision to include this instruction.

Allstate also contends that the trial court erred in omitting Allstate's requested instructions on collusion and the missing witness rule. On collusion, Allstate argues that the business relationship between Bland and Featherstone was sufficient evidence of collusion between them to require the trial court to instruct the jury on the issue of collusion or fraud by an agent. This evidence was not sufficient for the jury to find collusion or fraud, and we find no error in the trial court's omission of this instruction.

Allstate asserts further that the trial court erred in refusing to give the jury Tennessee Pattern Jury Instruction--Civil 2.03 that the jury could infer from Featherstone's absence that his testimony would have been adverse to Bland. Allstate bases this argument on the fact that Featherstone continued to reside in Shelby County, continued to have a business relationship with Bland, executed an affidavit for Bland's attorney, and was no longer employed by Allstate.

The missing witness rule, however, is inapplicable where the witness was equally

10

available to both parties and it seems no more likely that his testimony would favor the plaintiff than the defendant. *Waller v. Skeleton*, 31 Tenn. App. 103, 118, 212 S.W.2d 690, 697 (1948). In this case, there is no evidence that Featherstone was not equally available to both parties. Featherstone's testimony could have benefitted Allstate had he testified that he got the information on the application from Bland, as Allstate alleged. We find no error in the trial court's refusal of this jury instruction.

Finally, Allstate argues that trial court erred in allowing Bland to testify about Featherstone's hearsay statements. Even if Featherstone's statements were offered for the truth of the matter asserted, the statements are permissible under the party opponent exception in Tennessee Rule 803(1.2)(D). We find no error in the trial court admitting this testimony.

The decision of the trial court is affirmed on all issues. Costs of appeal are assessed against appellant Allstate, for which execution may issue if necessary.


_____
_____**HOLLY KIRBY LILLARD, J.**

**CONCUR:**


_____
**W. FRANK CRAWFORD, P. J., W.S.**


_____
**HEWITT P. TOMLIN, JR., SR. J.**