IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 23, 2004 Session

## MARION P. GURKIN, III v. ROY WOOD, INDIVIDUALLY, ASSOCIATES GENERAL INSURANCE, INC., TENNESSEE INSURANCE COMPANY, A MEMBER OF THE INGRAM INDUSTRIES INSURANCE GROUP, PERMANENT GENERAL ASSURANCE CORPORATION, PERMANENT GENERAL COMPANIES AND INGRAM INDUSTRIES INSURANCE GROUP

Appeal from the Circuit Court for Shelby County
No. 305743-8 TD     D'Army Bailey, Judge

No. W2003-00793-COA-R3-CV - Filed August 2, 2004

This case involves an automobile insurance claim.  The insured's family owned a chain of convenience stores.  The insured applied for a personal automobile insurance policy.  The insurance agent  completed the application, indicating that the vehicle was for personal use, and the insured approved it.  Later, the insured suffered personal injuries from a traffic accident and submitted a claim to the insurance company.  The insurance company asserted that the vehicle was owned by the family convenience store chain and was used for business purposes.  On this basis, the insurance company refused to pay the claim and rescinded coverage, alleging there were material misrepresentations in the insured's application.  The insured filed this lawsuit against the insurance company and its agent, and the insurance company filed a cross-claim against the agent.  After a bench trial, the trial court found that the vehicle was not owned by the family business and was not used for business purposes, and that consequently there was insurance coverage and the agent was not liable.  The insurance company appeals.  We affirm, finding that the evidence supports the trial court's findings that the insured owned the vehicle individually, that the insured did not use the vehicle for business purposes, and that the agent was not negligent.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, J., and DAVID R. FARMER, J., joined.

Gary R. Wilkinson and John P. Wade, Memphis, for the appellants Permanent General Insurance Companies, Permanent General Assurance Corp., Tennessee Insurance Company, and Ingram Industries Insurance Group.

Richard S. Taube, Louis P. Chiozza, and Steven Rand Walker, Memphis, for the appellee Marion P. Gurkin, III.

J. Kimbrough Johnson, Memphis, for the appellee Roy Wood.

**OPINION**

Plaintiff/Appellee Marion P. Gurkin ("Gurkin") and his brothers are partners in Gurkin & Son, a Tennessee partnership. Gurkin & Son owns and operates five convenience stores known as "Gurkin's Grocery, Gas and Bait." All but one of the convenience stores, commonly known as "Gurkin's," are located on Highway 57 in West Tennessee, ranging east to west from Grand Junction to Collierville. Gurkin was responsible for managing the Grand Junction store.

In 1997, Gurkin sought personal insurance coverage on his Ford F-250 pickup truck (the "Vehicle"). He contacted Cross-Defendant/Appellee Roy Wood ("Wood"), a casualty and property insurance agent who had done extensive business with Gurkin and his family in the past. Wood had written insurance policies for Gurkin & Son for five to seven years, car insurance for Gurkin's family members, life insurance for Gurkin and his brothers, and homeowners insurance for Gurkin's parents. Based on his personal knowledge of Gurkin and his family's business, Wood filled out the application form and, after Gurkin's approval, submitted the application to Defendants/Appellants Tennessee Insurance Company, a member of the Ingram Industries Insurance Group, Permanent General Assurance Corporation, Permanent General Companies, and Ingram Industries Group (collectively "Tennessee Insurance").[1]

The automobile insurance application filled out by Wood included sections to indicate ownership of the Vehicle and whether the Vehicle would be used for business purposes. Tennessee Insurance's underwriting guidelines provided that vehicles owned in a company name could not be insured. In addition, the underwriting guidelines outlined whether and to what extent vehicles used in the course of business could be covered. The guidelines separated business uses into acceptable and unacceptable uses. Acceptable business uses could be covered, so long as a twenty-five percent surcharge was applied, but unacceptable uses were uninsurable. Under the guidelines, an acceptable business use of a vehicle would be the "transportation of tools and/or materials incidental to the insured's business to a job site where the vehicle will remain parked for most of the work day." Unacceptable business uses were defined as:

1.      Any wholesale or retail delivery such as food (e.g. Pizza, etc.,) newspapers, magazines, mail, packages, retail merchandise, etc.

---

[1] According to Gurkin's brief, Tennessee Insurance is a member of the Ingram Industries Insurance Group and the successor to Permanent General Assurance Corporation. Therefore, to ensure all of the proper parties were before the trial court, Gurkin included those parties in his complaint.

2.      Any business involving frequent stops, whether on a regular route or not, such as courier or messenger services, exterminators, debit life insurance, sales.
3.      Vehicles displaying advertising or transporting passengers.
4.      Autos with permanently installed mobile equipment such as hoists, air compressors, pumps, generators, spraying, welding, building cleaning, lighting, and well servicing equipment.
5.      Employer use of a vehicle.

Gurkin's application indicated that he and his wife owned the Vehicle and that the Vehicle did not have a business use.

During Tennessee Insurance's review of the application, its underwriter sent both Gurkin and Wood a diary letter inquiring whether the Vehicle displayed any signs or logos and whether the Vehicle was used for business. The insurance agent responded on Gurkin's behalf by writing "no" next to both inquiries. Tennessee Insurance accepted Gurkin's application and issued a personal vehicle insurance policy with no additional premium for business use, effective August 18, 1997.

Once insured, Gurkin used the Vehicle for 100% of his transportation needs. This included recreational activities such as hunting, fishing, and golfing. It also included driving from his home in Collierville to the Grand Junction Gurkin's Grocery, Gas and Bait, regularly driving to the bank to conduct transactions for the Grand Junction store, and occasionally bringing merchandise from one Gurkin's store to another when a store ran low on merchandise. Gurkin infrequently made bank deposits for the other stores if one of his brothers was unable to do so. Gurkin also drove from the Grand Junction store to the Moscow Gurkin's Grocery, Gas and Bait two to four times per week for business meetings with his brothers, to drop off store receipts and bills, and to distribute cash. In addition, Gurkin owned a farm that produced revenue, and he drove his truck to the farm, though he did not use it while working on the farm. When applicable, Gurkin claimed mileage for business uses on his income tax return.

On November 30, 1998, Gurkin was involved in a vehicular accident with an uninsured motorist. Gurkin suffered personal injuries and property damage in the accident, and because the uninsured motorist was at fault, Gurkin filed a claim with Tennessee Insurance. After investigating the claim, Tennessee Insurance sent Gurkin a letter indicating that it had learned that the Vehicle had commercial license plates and was used for business purposes. The letter essentially told Gurkin that Tennessee Insurance might rescind his insurance on grounds of material misrepresentations in his application. Later, after further investigation, Tennessee Insurance rescinded Gurkin's insurance coverage, back to the effective date of the policy.

Gurkin filed suit against Roy Wood, Associates General Insurance, Inc.,[2] and Tennessee Insurance, seeking a declaratory judgment mandating payment of the insurance proceeds as well as compensatory and punitive damages. Tennessee Insurance filed a counter-claim against Gurkin, seeking rescission of the insurance contract based on material misrepresentations and omissions in the insurance application. Tennessee Insurance also filed a cross claim against Wood, seeking indemnification under Wood's contract with Tennessee Insurance, which required Wood to indemnify the company for losses resulting from his negligence or other tortious conduct. By agreement of the parties, the trial court first heard only the issue of coverage.

At the trial, Allison Garretson ("Garretson") vice-president of underwriting and premium finance for Permanent General Companies, testified on behalf of Tennessee Insurance. Garretson testified that Gurkin's insurance coverage was rescinded based on two material misrepresentations in his insurance application. First, Garretson testified, the insurance company's investigation indicated that the Vehicle was not owned by Gurkin personally, as was stated on his insurance application, but rather by a commercial entity. Second, she testified, Tennessee Insurance had learned that Gurkin used the Vehicle for business purposes. Garretson said that, under the underwriting guidelines, had Tennessee Insurance known that the Vehicle was commercially owned, it would not have been insured. Even assuming the vehicle was personally owned by Gurkin, she testified, had Tennessee Insurance known about the business use of the vehicle, it would have charged the additional premium required by the underwriting guidelines for all acceptable business uses.

At the outset of the trial, the parties had stipulated that the Vehicle was registered under the name "Gurkins." In her testimony, Garretson cited this fact as support for Tennessee Insurance's contention that the Vehicle was commercially owned, rather than by Gurkin individually, based on her understanding that "Gurkins . . . is a company."

Garretson testified that Tennessee Insurance concluded that the Vehicle had business uses based on a number of factors uncovered during its investigation. She noted several of Gurkin's uses for the vehicle:

> Mr. Gurkin used his vehicle to drive and make multiple stops. There was quite a bit of frequency in the travel to go to Moscow and Grand Junction and the bank and the farms and so forth, and so there was a substantial amount of use that . . . met the definition of business use . . . .

Garretson also noted that Gurkin had "a trader occupation that was undertaken for a profit, for a wage or a salary, and that's how the vehicle was being used was in the course of business." She testified that even though Gurkin occasionally transported merchandise from one store to the other, an unacceptable business use under the underwriting guidelines, such use would not have precluded

---

[2]Associates General Insurance, Inc. was Wood's insurance agency, which wrote insurance for several companies, including Tennessee Insurance. Gurkin's claim against Associates General was voluntarily non-suited.

coverage. Garretson also testified that there were errors on the insurance application completed by Wood and that, had the application and the subsequent diary letters returned by Wood indicated the name of the registered owner and all of Gurkin's uses for the Vehicle, Tennessee Insurance would have had an opportunity to investigate further and make a more informed decision on insuring Gurkin.

Garretson talked about how Tennessee Insurance analyzed business use. She testified that, if a client used the vehicle for business purposes at all, the client was to indicate this on the application, and the client, agent and underwriter would subsequently discuss the nature of the business use. The underwriter would then make the decision of whether and at what rate to insure the applicant based on the underwriting guidelines. Garretson testified that "the way the vehicle is being used in the course of business may" lead to exclusion of coverage. If the use is not covered in the underwriting guidelines, "[i]t comes to the judgment of the underwriter to evaluate each scenario and each risk and understand the characteristics of each risk and make a determination" on whether to refuse coverage or provide coverage with an additional premium.

Gurkin testified on his own behalf. Gurkin said that, until shortly before the trial, he believed that the Vehicle was titled in his name. Immediately before the trial, he learned that the Vehicle was titled under the name "Gurkins." Gurkin testified that he personally paid for the Vehicle and its insurance premiums. Gurkin also entered into evidence the divorce decree between him and his wife in which he was awarded the Vehicle in the division of marital property.

Wood testified as well. Wood stated that he had known Gurkin since 1995 and that they were friends. He testified that he had written the insurance for Gurkin and Son for five to seven years, car insurance for all of Gurkin's family members, life insurance for him and his brothers, and homeowner's insurance for his parents. Wood said that, through past dealings, he had become highly familiar with the operation of the Gurkin family business and the family members' uses for their vehicles at the time he wrote the insurance at issue.

Wood explained that he wrote the insurance for Gurkin's vehicle based on a prior policy he had written for Gurkin and his personal knowledge of Gurkin's intended uses for the Vehicle. At the time he wrote the application, Wood testified, he understood Gurkin drove from his Collierville home to work at Grand Junction, stopping at the Moscow Gurkin's store two or three times a week along the way to leave receipts and bills. He testified that he understood Gurkin to stop at the bank in Grand Junction regularly for transactions related to the Grand Junction store. Wood said that he followed the underwriting guidelines, that these uses did not constitute business use under the guidelines, and that he therefore wrote the application for personal use.

Responding to a set of hypotheticals on cross examination, Wood essentially admitted that he was unaware that Gurkin would make an occasional trip to another store location to transfer merchandise, that Gurkin would drive to the Grand Junction store and then double back to Moscow for business meetings with his brothers, and that Gurkin regularly drove to work on his revenue producing farm. Wood testified that these would be considered business uses. However, Wood only

considered it necessary to indicate business use on the application if it constituted over fifty percent of the use of the Vehicle. Wood asserted that, considering everything, he would still write Gurkin's insurance application as not including business use.

After hearing the evidence, the trial court found that Gurkin had made no misrepresentations to Tennessee Insurance concerning either the ownership or the use of the Vehicle. Regarding the ownership of the Vehicle, the trial court said: "I don't find that under the facts of this case that this was truly a commercially owned vehicle, notwithstanding the registration stipulation, and there is no evidence of a business known as Gurkin's anywhere." The trial court said that, even though Gurkin's divorce decree was issued after this controversy arose, the evidence nevertheless suggested that the Vehicle was owned by Gurkin individually, pointing to Gurkin's regular and exclusive use of the Vehicle, and his payment for and financing of the Vehicle. Further, the trial court found that Wood was not negligent in failing to discover the name on the registration, and therefore not liable to Tennessee Insurance under their indemnification agreement, because "there was no testimony about the agent having some responsibility to go and check the Motor Vehicle Department's registrations as to the names of registration in terms of any claim of a breach of duty by the agent." Addressing the Vehicle's use, the trial court held:

> I just don't see any proof in the record as to what the misrepresentation as to business use is. . . . [T]he agent who wrote this policy, Mr. Wood, not only does not claim that there was a misrepresentation by the insured but actually disavows and disputes that there was a misrepresentation and tells the Court by his testimony that he was aware of the manner, occasions and types of uses to which this vehicle was made by Mr. Gurkin, and he said that he knew what Mr. Gurkin was doing with this truck . . . . [He] looked at the policy and used his best judgment that there wasn't anything in the excluded categories that his awareness as a matter of fact of the uses of this vehicle would cause him to put it into anything but the category which he put it, which was a personal vehicle.

Thus, the trial court found no misrepresentations on the Vehicle's use because Wood had overall knowledge of Gurkin's uses for the Vehicle and determined they were not business uses pursuant to the underwriting guidelines. The trial court held that there was no evidence that Wood's assessment was negligent:

> I haven't heard testimony from the defense that relates to the types of matters and manners of use with respect to, quote, business, unquote, in as matters of fact that would have materially influenced the assessment by the agent or . . . would contraindicate a reasonable and appropriate allocation of designation as personal with respect to this vehicle in terms of the information known to the agent, and I don't see any negligent assessment by the agent with regard to the appropriate considerations representing the interest of his principle that would constitute negligence on his part with respect to his judgment and determination that this was a personal coverage vehicle.

Therefore, the trial court determined that Wood had considered the proper factors in determining whether Gurkin had a business use for the Vehicle and that Wood's assessment that the Vehicle did not have a business use was reasonable.

On appeal, Tennessee Insurance argues that the trial court erred in finding that Gurkin made no misrepresentations in his application, and argues that these misrepresentations were material, thus justifying its rescission of the insurance policy. In regards to the ownership issue, Tennessee Insurance argues that, in view of the undisputed facts that the registered owner of the Vehicle was "Gurkins" and that Gurkin's Grocery, Gas and Bait is commonly known as "Gurkin's," the evidence preponderates against a finding that Gurkin personally owned the Vehicle. As to the Vehicle's use, Tennessee Insurance argues that the weight of the evidence shows that Gurkin's use of the Vehicle amounted to business use. Tennessee Insurance also argues that the preponderance of the evidence shows that Wood was negligent in failing to report what he knew about Gurkin's alleged business use of the Vehicle and in not investigating the ownership of the Vehicle.

Because this case was tried by the trial court sitting without a jury, we review the trial court's factual findings *de novo* accompanied by a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996). The trial court's legal conclusions are reviewed *de novo* with no presumption of correctness. *Campbell*, 919 S.W.2d at 35.

Tennessee Insurance rescinded Gurkin's insurance policy on the basis of Gurkin's alleged misrepresentations pursuant to Tennessee Code Annotated section 56-7-103. The statute provides:

> No written or oral misrepresentation or warranty therein made in the negotiations of a contract or policy of insurance, or in the application therefor, by the insured or in the insured's behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless such misrepresentation or warranty is made with the actual intent to deceive, or unless the matter represented increases the risk of loss.

Tenn. Code Ann. § 56-7-103 (2000). Thus, Tennessee Insurance was justified in rescinding the policy if Gurkin (1) made an unintentional misrepresentation that increased the risk of loss for the insurance company, or (2) made any misrepresentation with intent to deceive. *See Vt. Mut. Ins. Co. v. Chiu*, 21 S.W.3d 232, 235 (Tenn. Ct. App. 2000). The determination of whether a misrepresentation, intentional or unintentional, has been made at all is a question of fact. *See Bland v. Allstate Ins. Co.*, 944 S.W.2d 372, 375 (Tenn. Ct. App. 1986). If it is determined that a misrepresentation occurred, and that misrepresentation was unintentional, the issue becomes whether the misrepresentation materially increased the insurer's risk of loss as a matter of law. *See Sine v. Tenn. Farmers Mut. Ins. Co.*, 861 S.W.2d 838, 839 (Tenn. Ct. App. 1993). In the context of an insurance application, a misrepresentation "increases the risk of loss when it is of such importance that it naturally and reasonably influences the judgment of the insuror in making the contract." *Chiu*, 21 S.W.3d at 235 (internal quotation marks omitted).

We first address the contention that Gurkin misrepresented ownership of the Vehicle by stating in his application that he and his wife were the owners rather than Gurkin and Son. The trial court found that this was not a misrepresentation because Gurkin in fact owned the vehicle. Tennessee Insurance argues that the evidence preponderates against such a finding, pointing to the registration of the Vehicle to "Gurkins" as conclusive proof that Gurkin's family business owned the truck. However, as the trial court noted, there is no evidence on the record of any legal entity named "Gurkins" that could have owned the Vehicle. Further, it is undisputed that Gurkin personally arranged the financing for the Vehicle, made payments on the loan, and was responsible for payment of the insurance premium. Even discounting the Vehicle's inclusion in the division of marital property during Gurkin's divorce proceedings, the evidence taken as a whole simply does not preponderate against the trial court's finding that Gurkin personally owned the truck. Therefore, the trial court's finding that Gurkin made no misrepresentation regarding the ownership of the Vehicle is affirmed.

Next, we address the assertion that Gurkin misrepresented his use of the Vehicle. Because an agent's knowledge is imparted to his principal, *Interstate Life & Acc. Co. v. Potter*, 68 S.W.2d 119, 126 (Tenn. Ct. App. 1933), Tennessee Insurance is deemed to know of the uses of the Vehicle of which Wood was aware, and it cannot be said that Gurkin made a misrepresentation regarding those uses. Wood was aware Gurkin would drive to the Moscow store to leave receipts and bills two to three times per week. Wood also knew that Gurkin made regular stops to the bank in Grand Junction for purposes related to the operation of the Grand Junction store. Therefore, we focus on the limited uses of which Wood was not aware, namely, the fact that Gurkin occasionally brought inventory from one store to the other, infrequently made deposits for his brothers' stores when they were unable to do so, regularly stopped at the Grand Junction store before attending business meetings with his brothers, and regularly drove to his revenue-producing farm. We must determine whether these constitute business uses which Gurkin failed to disclose.

Garretson testified that an underwriter would consult the guidelines to determine whether a given use constituted a business use, and that if a use was not covered by the underwriting guidelines, the underwriter would use his or her reasonable judgment to determine whether it constituted a business use. Only one of the uses of which Wood was not aware, transporting merchandise from one store to another, is ostensibly listed as a business use under the guidelines. The testimony was that this happened "occasionally," when one store unexpectedly ran low on a certain type of merchandise. As to the remaining uses, an underwriter would be presumed to use reasonable judgment and good sense. The fact that Gurkin used the truck to drive to the Grand Junction store before going to the Moscow store for business-related meetings, that he infrequently made deposits for his brothers, or that he drove to his farm, simply is not a business use. Overall, it appears that Gurkin just used the truck to drive wherever he needed to go, and that any "business" aspect of his use was *de minimus*. Under these circumstances, the evidence does not preponderate against the trial court's finding that Gurkin made no misrepresentations regarding his use of the Vehicle.

Tennessee Insurance also appeals the trial court's finding that the agent, Wood, was not negligent because Wood failed to convey his knowledge about the Vehicle's uses to Tennessee Insurance and, in the alternative, failed to make a diligent inquiry as to Gurkin's uses of the Vehicle. The trial court found that Wood was not negligent because Wood applied the underwriting guidelines to the uses of which he was aware and reasonably determined that they were not business uses. The evidence does not preponderate against this conclusion. Wood understood Gurkin to be using the Vehicle for all of his needs. The only arguable business uses of which Wood was aware was Gurkin's driving to the Grand Junction store, with a stop at the Moscow store two to three times per week, and to the bank to make deposits and obtain change for the Grand Junction store. These likewise are *de minimus*. Under these circumstances, we agree with the trial court's conclusion that, based on what he knew, Wood reasonably determined that Gurkin's truck was for personal use and that Wood was not negligent in failing to tell Tennessee Insurance what he knew.

To the extent that Wood failed to ferret out all of Gurkin's uses for the Vehicle, Wood can not be held liable, even assuming he was negligent, because he was not the proximate cause of any harm to Tennessee Insurance. As noted above, Gurkin's failure to report these activities as business uses did not constitute a misrepresentation. Thus, had Wood reported these uses, Tennessee Insurance could not reasonably have charged an additional premium for business use. Therefore, Wood cannot be held liable for Tennessee Insurance's failure to learn of these uses, because the lack of knowledge caused no damage to the insurance company. *See Fireman's Fund Ins. Co. v. Jamieson*, 531 F. Supp. 423, 425 (W.D. Tenn. 1982) ("If the negligence of the agent does not alter the risk the insurance company was willing to take, the agent's negligence is not the cause of the insurer's loss."). Accordingly, the evidence does not preponderate against the trial court's holding that Wood had no liability to Tennessee Insurance.

Therefore, the decision of the trial court is affirmed. Costs of this appeal are taxed against the Appellants Permanent General Insurance Companies, Permanent General Assurance Corp., Tennessee Insurance Company, and Ingram Industries Insurance Group, and their sureties, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE